RECEIVED

JAN 07 2013

**ATTORNEY'S NAME:** Murphy, Kerry  31382
**AND ADDRESS:**     701 Poydras St.,  Suite 5000
                     New Orleans    LA  70139

### CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO:    2013 -- 00053      1      DIVISION: I                SECTION: 14

KD GRETNA PROPERTIES, L.L.C. VERSUS DECATUR REALTY CORP.   ET AL

## CITATION

TO:  DECATUR REALTY CORPORATION
     THROUGH:  ITS AGENT FOR SERVICE OF PROCESS: CRESCENT CITY CORPORATE
     SERVICES, L.L.C.
     701 POYDRAS ST.
     STE. 3600
     NEW ORLEANS                      LA    70139-7735

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
  FOR DECLARATORY JUDGMENT, BREACH OF FIDUCIARY DUTY, AND DAMAGES W/DISCOVERY

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION
Legal assistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association.  If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.
**\*\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF,  I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA**    January 3, 2013        .

**Clerk's Office, Room 402, Civil Courts**              **DALE N. ATKINS,  Clerk of**
**421 Loyola Avenue**                                   **The Civil District Court**
**New Orleans, LA**                                     **for the Parish of Orleans**
                                                        **State of LA**

                                                        by

                                                        **Deputy Clerk**

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ | On this _____ day of _____ |
| _____ served a copy of the w/i petition | _____ served a copy of the w/i petition |
| FOR DECLARATORY JUDGMENT, BREACH OF FIDUCIARY DUTY, AND DAMAGES W/DISCOVERY | FOR DECLARATORY JUDGMENT, BREACH OF FIDUCIARY DUTY, AND DAMAGES W/DISCOVERY |
| On | On |
| DECATUR REALTY CORPORATION | DECATUR REALTY CORPORATION |
| THROUGH:  ITS AGENT FOR SERVICE OF PROCESS: CRESCENT CITY CORPORATE SERVICES, L.L.C. | THROUGH:  ITS AGENT FOR SERVICE OF PROCESS: CRESCENT CITY CORPORATE SERVICES, L.L.C. |
| | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating  HIM / HER the said _____ |
| Returned  same  day | DECATUR REALTY CORPORATION |
| No. | |
| Deputy Sheriff of _____ | |
| Mileage: $_____ | being absent from the domicile at time of said service. |
| | Returned  same  day |
| _____/ ENTERED /_____ | No. |
| PAPER                        RETURN | |
| _____/_____/_____ | Deputy Sheriff of _____ |
| SERIAL NO.     DEPUTY      PARISH | |

# Exhibit A

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.: ℓℴ|3 - 53                                   DIVISION: I-14

KD GRETNA PROPERTIES, L.L.C.

versus

DECATUR REALTY CORP. AND SIDNEY BACH

FILED:_____          _____
                                 DEPUTY CLERK

ORIGINAL VERIFIED PETITION FOR DECLARATORY JUDGMENT,
BREACH OF FIDUCIARY DUTY, AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, KD GRETNA

PROPERTIES, L.L.C., in its capacity as shareholder of and on behalf of Decatur Realty Corp.,

who respectfully files this Original Verified Petition for Declaratory Judgment, Breach of

Fiduciary Duty, and Damages against nominal defendant DECATUR REALTY

CORPORATION ("Decatur") and defendant SIDNEY BACH ("Mr. Bach" and, together with

Decatur, "Defendants") upon representing as follows:

I.

PARTIES

1.    Plaintiff KD GRETNA PROPERTIES, L.L.C. ("Plaintiff" or "KD Gretna") is a

shareholder in Decatur. KD Gretna is a limited liability company organized under the laws of the

State of Louisiana with a single member, Wayne Ducote ("Mr. Ducote"), who is domiciled in the

state of Florida.  KD Gretna has been a shareholder in Decatur at all times relevant hereto.

2.    Nominal Defendant DECATUR REALTY CORPORATION ("Decatur") is a

corporation organized under the laws of the State of Louisiana with its principal place of

business in New Orleans, Louisiana, in good standing in and authorized to do business in the

State of Louisiana.

3.    Defendant SIDNEY BACH ("Mr. Bach") is a natural person of the full age of

majority, who, upon information and belief, is a citizen of the State of North Carolina and a

1

resident of the city of Asheville, North Carolina. Mr. Bach has been the President and a Director of Decatur at all times relevant hereto.

**II.**

**JURISDICTION AND VENUE**

4.      Venue is proper in this Court under Article 74 of the Louisiana Code of Civil Procedure because defendant Mr. Bach has breached his fiduciary duties as an Officer and Director of Decatur in this Parish.

5.      Decatur was at all relevant times operating in this Parish with its principal place of business located in this Parish.

**III.**

**FACTS**

**General Information Regarding Decatur and Its Properties**

6.      There are only two shareholders in Decatur. Plaintiff is a 40.56 percent shareholder in Decatur and likewise was a 40.56 percent shareholder at the time of the occurrences and transactions complained of herein. Plaintiff's shares were purchased on October 22, 2012 from the Succession of Dorothy Shaumburger (the "Succession"). Mr. Bach owns the remaining 59.44 percent of shares in Decatur.

7.      Decatur has a sole Director: Mr. Bach. Decatur previously had two directors: Mr. Bach and his wife, Patricia Bach ("Mrs. Bach"). Mr. Bach served as Director as well as President, and Mrs. Bach served as Director and Vice-President/Secretary. Upon information and belief, Mrs. Bach resigned from her position as Director in December 2012, but was recently elected (and remains) Secretary and Treasurer of Decatur.

8.      Decatur owns two real estate assets: a building located at 413-15 Decatur Street, New Orleans, Louisiana (the "Building") and a parking property located at 519 Conti Street, New Orleans, Louisiana (the "Parking Property") (collectively, the "Decatur Properties"). Decatur's only business is leasing out the Decatur Properties.

9.      Mr. Ducote has been actively and successfully involved in the parking business for 45 years and is extremely knowledgeable about that business. He owns or controls 1,700

2

temporary restraining order ("TRO"), and served the Motion upon Defendants and counsel for Decatur and Mr. Bach.

25.     On December 13, 2012, Defendants agreed not to enter into any lease on the Parking Property or the Building until after the December Shareholders' Meeting (*see* **Exhibit 9 (in globo)** hereto), and on December 14, 2012, Plaintiff agreed to defer its request for a TRO until after the December Shareholders' Meeting (*see* **Exhibit 10** hereto).

26.     On December 14, 2012, counsel for KD Gretna requested "a copy of the current lease of the parking lot, and, in the event that the renewal terms were already in the process of being renegotiated, any proposed lease of the parking lot." *See* **Exhibit 10** hereto. Decatur provided no information to KD Gretna in response to this request.

27.     On December 17, 2012, the December Shareholders' Meeting was held in New Orleans, Louisiana. Present were Mr. Bach, Mr. Ducote, Ms. Bernard, counsel for Decatur and Mr. Bach, and counsel for KD Gretna. A court reporter transcribed the proceedings. At the meeting, Mr. Bach re-elected himself as Decatur's sole Director. *See* **Exhibit 11** hereto at pp. 7-8. Upon information and belief, at a subsequent meeting of the Directors of Decatur, Mr. Bach re-elected himself President and elected his wife, Patricia Bach, Secretary and Treasurer.

28.     During the December Shareholders' Meeting, the deferred items from the October meeting were perfunctorily discussed. With respect to the Decatur Properties, Mr. Ducote requested that Mr. Bach provide him, as Decatur's 40.56 percent shareholder, with information regarding the terms of any proposed new lease on the Parking Property or the Building. This request was denied. *Id.* at pp. 22-23.

29.     On December 17, 2012, immediately following the December Shareholders' Meeting, counsel for KD Gretna again requested the terms of any proposed parking lot lease, via email to counsel for Decatur and Mr. Bach, and offered to pay $7,500 per month to lease the Parking Property. "We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree

to this request, which is clearly in the best interests of the corporation." *See* **Exhibit 12** hereto. This offer was reiterated in an email from counsel for KD Gretna to counsel for Decatur and Mr. Bach on December 19, 2012. *See* **Exhibit 13** hereto.

30.     On December 17, 2012, counsel for Decatur and Mr. Bach advised that Mr. Bach was on a plane, implying he could not get an answer to KD Gretna's request for proposed Parking Property lease terms, and on December 18, 2012, counsel for Decatur and Mr. Bach wrote to counsel for KD Gretna "[KD Gretna's] request is denied." *See* **Exhibit 14** hereto.

31.     On December 19, 2012, counsel for KD Gretna again requested, via email to counsel for Decatur and Mr. Bach, that he "advise whether a lease of the parking lot and a lease of the building have been negotiated and further, whether a lease of either has been entered into." *See* **Exhibit 15** hereto.

32.     Also on December 19, 2012, counsel for KD Gretna, via email to counsel for Decatur and Mr. Bach, provided such counsel with notice of KD Gretna's intention to file in the Injunction Suit an Amended and Restated Verified Petition for Preliminary and Permanent Injunction ("Amended Petition"), along with a Second Motion for Temporary Restraining Order and Preliminary Injunction (the "Second Motion for TRO") prohibiting the Defendants from (a) entering into any lease of the Parking Property or the Building without first providing Plaintiff with information regarding the terms of any proposed lease(s); and/or (b) entering into a long-term lease of the Parking Property that does not maximize the value to Decatur and its shareholders. *See* **Exhibit 13** hereto.

33.     On December 19, 2012, the Amended Petition and Second Motion for TRO were filed in the Injunction Suit and served upon Defendants and counsel for Defendants.

34.     At 9:55 on the night of December 19, 2012, counsel for Decatur and Mr. Bach advised counsel for KD Gretna that "[Decatur] has signed leases for both the parking lot and the building," despite Mr. Bach's knowledge of the pending Second Motion for TRO. *See* **Exhibit 16** hereto.

35.     On December 20, 2012, KD Gretna filed in the Injunction Suit the Second Amended and Restated Petition for Preliminary and Permanent Injunction (the "Second

7

48.     At all times pertinent hereto, Mr. Bach was aware that maximizing the value to Decatur and its shareholders from the Parking Property is in the best interests of the corporation and its shareholders.

49.     Prior to entering into a lease on the Parking Property for an amount substantially less than $7,500 per month, Mr. Bach was aware that Mr. Ducote had offered to pay up to $7,500 per month to lease the Parking Property.

50.     Prior to filing this Original Verified Petition for Breach of Fiduciary Duty and Damages, Plaintiff made exhaustive efforts, described herein – including but not limited to repeatedly requesting information regarding current and proposed leases on the Decatur Properties, offering to pay $7,500 per month to lease the Parking Property, and pursuing injunctive relief in the Injunction Suit – to prevent Mr. Bach from entering into the leases on the Decatur Properties and thereby breaching his fiduciary duties to Decatur.

51.     Plaintiff has not requested that the managing directors and/or the other shareholders of Decatur join in this suit because such a request would be futile. Mr. Bach is the President and sole Director of Decatur as well as its controlling shareholder (and the only shareholder other than Plaintiff). It is Mr. Bach's conduct which is complained of in this suit, and it would be futile to ask Mr. Bach to sue himself for breaches of his fiduciary duties to Decatur and its shareholders.

## IV.

## BREACH OF FIDUCIARY DUTY

52.     Plaintiff adopts by reference and incorporates all previous allegations in all preceding paragraphs as if fully set forth herein.

53.     Mr. Bach is and was at all times pertinent hereto an officer and director of Decatur who owes fiduciary duties to Decatur and its shareholders, including Plaintiff. La. Rev. Stat. § 12:91.

54.     Mr. Bach acted in bad faith and breached his fiduciary duties to Decatur and its shareholders, including Plaintiff, by, *inter alia*:

10

a.   Repeatedly denying Plaintiff's requests for information regarding the terms of any current and/or proposed leases of the Decatur Properties;

b.   Entering into long-term leases of the Decatur Properties without first providing Plaintiff with information regarding the terms of those leases;

c.   Entering into long-term leases of the Decatur Properties that do not maximize the value to Decatur and its shareholders;

d.   Failing to accept Plaintiff's offer to lease the Parking Property for $7,500.00 per month and instead entering into a long-term lease of the Parking Property for a value substantially lower than $7,500 per month;

e.   Failing to meet in good faith with Plaintiff at the court reporter-transcribed December Shareholders' meeting;

f.   Failing to discuss the proposed leases of the Decatur Properties at the December Shareholders' Meeting; and

g.   Entering into long-term leases on December 17, 2012, on the Decatur Properties with knowledge of Plaintiff's pending offer and failing to notify Plaintiff that the leases had been signed until late in the night of December 19, 2012.

55.    Because the leases on the Building and the Parking Property were executed in violation of Mr. Bach's fiduciary duties to Decatur and its shareholders, such leases are invalid and unenforceable.

56.    These actions and inactions of Mr. Bach have caused and will continue to cause damage to Decatur and its shareholders, including Plaintiff, by, *inter alia,* failing to maximize the value of a lease of the Parking Property and causing Plaintiff to incur legal fees and costs that otherwise would not have been incurred.

## V.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff KD Gretna prays, pursuant to Louisiana Code of Civil Procedure articles 615 and 1871 *et. seq.*, that after due proceedings are had, that this Court render: (a) a declaratory judgment in favor of Decatur Realty Corporation and against Sidney Bach that the leases on the Building and the Parking Property are invalid and unenforceable because they were executed in violation of Sidney Bach's fiduciary duties to Decatur Realty Corporation and its shareholders under Louisiana Revised Statute Section 12:91; and (b) a judgment in favor of Decatur Realty Corporation and against Sidney Bach for actual damages in

11

an amount to be proven at trial, plus attorneys' fees, interest and costs. Plaintiff further prays

that, in the event that it prevails in this action and a monetary judgment is rendered in favor of

Decatur, that such judgment order that any proceeds from such judgment be distributed among

Decatur's shareholders on a pro rata basis in accordance with their ownership interests in the

corporation.

Respectfully submitted,

GLADSTONE N. JONES (#22221), T.A.
LYNN SWANSON (#22650)
CATHERINE E. LASKY (#28652)
KERRY MURPHY (#31382)
JONES, SWANSON, HUDDELL &
  GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Telecopier: (504) 523-2508

**ATTORNEYS FOR PLAINTIFF**

**VERIFICATION PURSUANT TO LA. C.C.P. ART. 615**

I, Kerry Murphy, counsel for Plaintiff KD Gretna Properties, L.L.C., pursuant to La.

C.C.P. art. 615, hereby verify the foregoing alleged facts in this Original Verified Petition for

Declaratory Judgment, Breach of Fiduciary Duty, and Damages. I further confirm, verify, and

certify that the allegations and requested relief in this petition otherwise comport with the

requirements of La. C.C.P. art. 863(B).

KERRY MURPHY

Sworn to and subscribed before
me this 3 day of January, 2013.

NOTARY PUBLIC

Emma E. Daschbach
Notary Public
Bar No. 27358
of Orleans, State of Louisiana
mission is for life

12

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

**SHERIFF PLEASE SERVE:**

Decatur Realty Corporation
Through its agent for service of process:
Crescent City Corporate Services, L.L.C.
701 Poydras St., Ste. 3600
New Orleans, LA 70139-7735


**WILL SERVE VIA LONG ARM STATUTE**

Sidney Bach
President
Decatur Realty Corporation
425 Kimberly Ave.
Asheville, NC 28804

13

Decatur Realty Corporation
425 Kimberly Avenue
Asheville, NC 28804

October 1,  2012

Succession of Dorothy Schaumburger
c/o William J. Oberhelman, Jr., Esq.
228 St. Charles Avenue, Suite 1138
New Orleans, LA 70130-2611

Ref. Decatur Realty Corporation
Notice of Annual Shareholders' Meeting

Dear Billy,

As indicated in my recent e-mail to you of September 27, 2012, also
forwarded to you by fax, the 2012 Annual Meeting of the shareholders of
Decatur Realty Corportion will be held on October 24, 2012 at 11:00 a.m.
in the first floor office of the Corporation's building at 413-15 Decatur Street,
New Orleans. Please note the time, date and place of the meeting so that you
may attend and participate as attorney of record on behalf of the interests of
the Succession of Dorothy Schaumburger.

At the meeting the following matters will be discussed and/or voted upon:

1. Proposed sale and transfer of the 60% majority interest in the
   Corporation

2. To nominate and elect the Officers and Directors of the Corporation
   to serve in such capacities from January 1, 2013 to December 31, 2013,
   or until such time as they may resign and are replaced prior to the
   expiration of their terms in the event of a change in ownership of the
   60% majority interest in the Corporation.



EXHIBIT
1

William J. Oberhelman, Jr., Esq.
October 1, 2012
Page 2

3. To authorize the President of the Corporation to renew the current lease for the operation of its Conti Street parking lot for a period of one (1) year, subject to the right of the Corporation to cancel that lease upon giving a 30-day notice to the lessee in the event of a change in the ownership of the Corporation's 60% majority shareholder interest.

4. To discuss the estimated costs for necessary structural repairs to preserve the building at 413-15 Decatur and to authorize that such repairs to be undertaken at this time.

5. To discuss the recent increases in property tax assessments of the Corporation's properties by the Assessor of Orleans Parish.

6. To authorize the suspension of any further dividend payments by the Corporation for the year 2012 due to the anticipated costs for building repairs as well as the recent increases in assessments for property taxes that will become due in January 2013.

7. To authorize an increase in the Corporation's management fee to $1,000 per month, exclusive of reimbursements for necessary expenses that may be incurred from time to time on behalf of the Corporation.

8. To consider any and all other matters which may be necessary and appropriate.

Sincerely,

Sidney M. Bach, President
Decatur Realty Corp.

By Certified Mail No._____

Dec 23 12 07:51P    Sidney M. Bach          504 895 2205          p.5

# DUCOTE'S DOCUMENT REQUEST
## 10/23/12

Documents needed:
- Lease between Decatur Realty and Cigar Store tenant
- Lease/operating agreement b/w Decatur Realty and 519 Conti
- Insurance certificates for both properties, covering both General Liability, Property and Workers' Comp
- Tax returns for Decatur Realty for 2004 and 2001.
- Tax returns for 519 Conti for 2001-2007

Questions:

Who are the other shareholders?
Who are the officers and directors of the corporation?
What is the term of the lease with Cigar Store? And annual rent amount?
Is it a gross or net lease?
Who actually operates the parking facility at 519 Conti?
Is rent paid to Decatur from 519 from the parking operations? And, if so, what is the amount and the basis?
What is the operating arrangement for the parking facility?
Are sales and parking taxes paid on gross receipts?
Are gross receipts shown on 519's income tax returns, net of sales and parking taxes? Or do receipts include parking taxes?
Who owns 519 Conti? Does 519 lease the parking operation, or is 519 the parking operator?
What was the reason for the transfer of the parking operation from Decatur to 519?
519 Conti paid rent in 2010 of $8,835; to whom was that rent paid?

We need to break-out the gross rents shown on the tax returns between building rent and parking lot rent. Additionally, who paid those rents?
What is the rental history on the building for the past 10 years?
What is the net income to Decatur relative to the parking operation?
Property taxes on the building and parking lot should be around $7,500 total for the past several years.
Tax returns for Decatur Realty show taxes paid of more than that amount. What were those taxes for?
What is the maintenance status of the building?
Is there any deferred maintenance that is required?
Do we have roof damage? Termite damage? Structural damage? Or any notices of violations from the VCC?
Explain the lawsuit filed by Ryan Earls against Boykins, Decatur Realty and 519 Conti
Court records indicate that lawsuit has been settled; what was the settlement amount, and who paid it?
When did 519 take over control of the parking operations?
Do you have a check register for the past several years?
Do you prepare a monthly P&L for either or both of the properties?
Do you prepare an annual P&L for either or both of the properties?
How are management fees determined?



EXHIBIT
2

Decatur Realty Corporation
Annual Shareholders' Meeting
10/24/2012  11:00 AM
413-15 Decatur  New Orleans

Meeting Agenda
(see October 1, 2012 Notice of Meeting)
⟨ATTACHED⟩

Present: Sidney M. Bach, Pres./Director
Patricia E. Bach, Secty./Director
William J. Oberhelman, Jr., Esq. Attorney for the Succ. of Dorothy
Schaumburger

1. Discussion of proposed sale of the 60% Majority Interest in DRC.

2. Ratify the Minutes of the Special Meeting of the Shareholders of DRC held, after due notice, on January 18, 2012.

3. Nomination of Officers and Directors:

Sidney M. Bach to serve as President & Director and Patricia E. Bach to serve as Vice-President-Secretary & Director of the Corporation from Jan. 1, 2013 to Dec. 31, 2013 or until such time as they may resign and are replaced prior to the expiration of their terms in the event of a change in the majority ownership of the Corporation.

Close the Nominations & Vote

FOR _60%_ AGAINST _40%_ ABSTAIN _____

4. Motion to authorize lease renewal of Conti St. parking lot (Notice of Meeting #3) *attached*

Discussion
Call for vote

FOR _____ AGAINST _____ ABSTAIN _____

EXHIBIT
3

5. Necessary structural repairs to preserve the building at 413-15 Decatur
   Recent repair proposal

   Motion to Authorize that Repair Proposal be accepted.
   Discussion
   Call for vote

6. Property tax assessments and increases

7. Suspension fo further dividend distributions to shareholders for year 2012
   due to anticipated costs for necessary building repairs and payment of
   increased property taxes due in January 2013.

8. Authorize increase in the Corp.'s management fee to $1,000/month,
   exclusive of reimbursements for corporate-related expenses incurred.
   (see Meeting Notice, # 7)

9. Authorize the Corporation to provide Officers and Directors liablity
   insurance coverage for its officers and directors, such coverage
   not to exceed the sum  of $2,000,000.

10. Other business

KD Gretna
601 Poydras Street, Suite 2625
New Orleans, LA 70130
(504) 525-9017

Tuesday, October 30, 2012

**VIA FEDEX**
Sidney Bach, President
Decatur Realty Corporation
425 Kimberly Avenue
Asheville, NC 28804

**VIA EMAIL AND HAND-DELIVERED**
Mark Stein
One Shell Square
701 Poydras Street, Suite 3600
New Orleans, LA 70139
mstein@lowestein.com

RE: Decatur Realty Corporation

Dear Sidney,

Thank you for inviting Yolande and I to participate as 40% shareholders at the annual meeting of Decatur Realty Corporation. We discussed several topics and you advised us to contact your accountant, CPA and contractors to secure the information that we were seeking. However, when Yolande called your wife for contact information, we were directed to your attorney, Mark Stein, who advised that he would provide nothing to us until he had stock certificates in his hand to prove our ownership. We hand-delivered a formal request to him last week from the former owners of the shares for a reissuance of the stock certificates to KD Gretna and we hope that he is satisfied with us as owners of the 40% share of Decatur Realty Corporation.

Notwithstanding the above, there are a number of major issues relating to Decatur Realty Corporation which causes us concern as minority shareholders. Many of these issues were addressed in the agenda that you set forth for the annual meeting.

1. The accounting for Decatur Realty Corporation, as directed by you as president and director of Decatur Realty Corporation, is unprofessional and incomplete. Shareholders have not been provided monthly, quarterly or even annual statements of any type, or check registers or general ledgers. The only financial data the 40% shareholders have been privy to are tax returns and irregular and incomplete reports which include reported cash in bank and proposed distributions. No check registers, no deposit history, no general ledgers and no other supporting data have been provided. No P&L's for the corporation have been produced for years. We therefore request annual P&L statements for the past 10 years, quarterly statements for the past two years and monthly statements for all of 2011 and year-to-date 2012. In the future we will require monthly P&L for the operation of the corporation. We also want to review monthly bank statements for the past 5 years. If records from years prior to Hurricane Katrina were lost, financials subsequent to Hurricane Katrina should suffice.

2. You expressed a desire to sell your 60% interest to our existing tenant at 413-415 Decatur. I, too, would like to acquire your 60% interest in Decatur Realty Corporation but you have indicated to me that



**KD Gretna**
601 Poydras Street, Suite 2625
New Orleans, LA 70130
(504) 525-9017

you will sell only to the tenant. I am interested in discussing the sale terms with you and request that you quote me a price for your 60% interest. I have not seen the lease between Decatur Realty Corporation and the building tenant and my predecessor has not seen it either. I ask you to please produce the current lease for the property located at 413-415 Decatur. I would also like to review the leases for this property for the past 5 years. You told us that this tenant currently pays a monthly rent of $10,000 but is now paying an additional $2,000/month for some undefined parking in the 519 Conti lot. This lease allegedly expires on December 31st of this year. Have you negotiated a new market rent with this tenant in the event you do not sell your interest to him? As you may or may not know I own numerous pieces of commercial real estate, including parking properties and buildings, and I may be of assistance in negotiating a new lease price and lease term with the existing tenant.

3. If you do sell your interest to this tenant I assume he knows he will have to pay market rent for his occupancy in the future and cannot participate in any self-dealing or any non-arm's-length basis transactions simply because he controls 60% of the Decatur Realty Corporation. The majority owner is required by law to use his position as president and as controlling shareholder for the benefit of all owners of the corporation and not one that would benefit the controlling party exclusively.

This brings us to the question of why you wanted to authorize $55,000 in expenditures to repair and replace the front wall and column on the property. Per your request, I inspected the property shortly after we had our meeting and I have photographs of the proposed repairs. I also called your selected contractor to discuss the scope of his work. It seems that the wall on the left side of the property with the storefront has moved back about an inch and part of the stucco on the column also on the left seems to be breaking away from the wall. I do not know if that was caused by windstorm damage or not. In order for us to pursue a claim, if you think that is appropriate, we will need an affidavit from the tenant stating that the windstorm did cause the damage and that the storefront was not in that condition prior to the storm. Obviously, you do not know if current condition existed prior to the storm and I do not want to file a claim unless I am sure that windstorm damage is to blame. The contractor said he is meeting the adjuster this week and I would like to attend that meeting. What is the coverage on the building and do we have the standard 5% windstorm deductible?

That said, I see no immediacy to undertake the repairs. Furthermore, I believe we need to consider more than one bid from one contractor before any work is to be performed to ensure we receive the best possible price.

4. The parking property at 519 Conti: At the meeting you informed us that Decatur Realty Corporation leases the parking property at 519 Conti to a Sub-S Corporation, 519 Conti Street, Ltd., of which you are the sole shareholder. You further advised that you did this almost 10 years ago to relieve Decatur Realty Corporation of any liability exposure relative to parking operations. Exactly when did this lease commence? You stated that the rent paid to Decatur Realty Corporation from 519 Conti Street, Ltd. was $2,000/month. From the tax returns you provided for 519 Conti Street, Ltd., rent paid for 2008 was $20,000, 2009 was $7,933, and 2010 was $8,835. Again, I do not have rent paid for 2011. I cannot locate in the tax returns for Decatur Realty Corporation where any rent was paid by 519 Conti Street, Ltd. to Decatur Realty Corporation for the parking property other than possibly $8,000 in 2010. The tax returns of Decatur Realty Corporation show gross revenue for both the building and the parking property of $116,000 in 2006, $120,000 in 2007, $123,000 in 2008, $104,000 in 2009 and $128,000 in 2010. We have not yet seen the 2011 tax returns. Annual rent from the building is $120,000 and the $24,000 in rent from the lot adds up to $144,000 per year, but that is not reflected in any of the tax returns.

KD Gretna
601 Poydras Street, Suite 2625
New Orleans, LA 70130
(504) 525-9017

5. I am aware of a lawsuit filed by Ryan Earls against Decatur Realty Corporation, et al, and that the lawsuit has recently been dismissed (I assume it was settled). You stated at the meeting that you paid that settlement amount because of the hold harmless provision in your lease with Decatur Realty Corporation. I further assume that you paid for all attorney fees likewise incurred by Decatur Realty Corporation in connection with this litigation. You did not have any garage liability, garage keeper legal liability or general liability coverage on the parking property. While it is admirable that you paid the settlement amount, you jeopardized the position of ownership of the corporation by your failure to properly insure the ongoing parking operations. Had you been unable to pay any judgment, the burden would have fallen on Decatur Realty Corporation. If your lease contained an indemnification clause, did it also not contain a clause requiring you to properly insure? Please provide a copy of the leases between Decatur Realty Corporation and 519 Conti Street, Ltd. since its inception and including rents paid by 519 Conti Street, Ltd. to Decatur Realty Corporation during this period.

6. Your prepared agenda included a proposal to extend the lease between Decatur Realty Corporation and 519 Conti Street, Ltd., for another year on the same terms and conditions. The reason you stated for this extension was to maintain the employment for long-term employees. While I am sympathetic to maintaining employment of loyal individuals, I believe more revenue could be generated if property is operated more efficiently. To that end, I would be willing to pay Decatur Realty Corporation twice the amount you are offering to pay - $48,000 a year and agree to maintain these employees as long as they comply with our employment guidelines and reporting procedures. This parking property is not competitive with any properties I own in any manner and has a different client base. According to the tax returns of 519 Conti Street, Ltd. that you provided your predecessor, that entity breaks even and sometimes even loses money from the parking operation. Leasing to me would relieve you of the obligations of managing this property and would double the revenue paid to Decatur Realty Corporation.

7. I am also concerned as to whether 519 Conti Street, Ltd. is reporting and/or paying sales and parking tax to the City of New Orleans and the State of Louisiana. These taxes total roughly 10% of gross revenues. The tax return for Decatur Realty Corporation shows taxes and licenses expenses of $20,915 for 2006, $18,629 for 2007, $9,836 for 2008, $10,498 for 2009 and $11,458 for 2010 and we do not know what is reported for 2011. As property taxes on both properties have totaled less than $7,500 per year for the past 3 years and probably lower than that in prior years, it is confusing as to why the taxes reported on the income tax return were substantially higher than that. Did those taxes include sales taxes paid by the corporation on revenue enjoyed by 519 Conti Street, Ltd.? You have provided tax returns for 519 Conti Street, Ltd. for the past several years. It is unclear as to whether or not the revenue reported in these returns is after deduction of sales and parking taxes. Decatur Realty Corporation should not be paying those taxes. You should know that sales taxes are due by the operator and/or the property owner and, if not paid on parking revenue, both the operator as well as the property owner is liable for the tax along with penalties and interest.

I would like the opportunity to purchase your interest in the parking property. During the shareholders meeting you seemed determined to sell your interest in the corporation to the building tenant and that the tenant at the cigar store wanted to use the parking property for their own purposes, including for customers and staff. That parking property has an economic interest that is separate from the building on Decatur Street and any act to remove the commercial opportunities from that parking for the benefit of the 60% owner would be a gross display of self-dealing and a gross breach of fiduciary duty. Rest assured that I will take whatever steps are necessary to prevent the parking property from becoming

KD Gretna
601 Poydras Street, Suite 2625
New Orleans, LA 70130
(504) 525-9017

anything other than the commercial parking operation and your prospective purchaser should be made very well aware of that fact.

8. At the annual meeting, you voted to secure officers and directors insurance. We do not need that type of coverage. Decatur Realty Corporation owns two properties with two tenants. Each tenant should have their own insurance policy which covers the ownership, indemnifies us for all perils and names us as additional insured parties. If that coverage is in place, O&D coverage is not necessary. You chose not to have insurance on the parking property and therefore you are concerned about your future exposure as president of Decatur Realty Corporation. There is no reason for the Decatur Realty Corporation to incur this expense.

9. Management Fee. At the meeting you and the other 60% shareholders voted to increase your management fee from $500 a month to $1,000 a month to reflect the amount of work you have performed over the past year. Much of that work was involved with the litigation and that was for the benefit of 519 Conti Street, Ltd. Just so you aware, commercial property management companies charge between 3-5% for property management services. Based on the revenue we have collected, that fee would be less than what you are currently being paid at the rate of $500 per month.

Finally, I question why you have not considered changing the status of Decatur Realty Corporation from a C-Corporation to an S-Corporation. The tax ramifications would be significantly beneficial.

This correspondence is not meant to be combative. I simply want information from past years and want to be informed of and involved in any and all plans going forward. You own 60% interest in the corporation and therefore control the future of Decatur Realty Corporation. You have a fiduciary responsibility to all shareholders to treat each asset owned by the corporation at an arm's-length basis without regard to personal feelings relative to tenants or employees.

I will assist you in any capacity that you desire so that we can resolve these matters and make sure that all shareholders are treated fairly. There is no reason to take any immediate steps which would bind the corporation in any fashion beyond the end of this year. Likewise, there is no reason to undertake the repairs of the building until we determine what we will do, how and why.

I do not know if Mark Stein represents you personally, 519 Conti Street, Ltd. or Decatur Realty Corporation. If he is representing Decatur Realty Corporation, I would like to know in what capacity, what is the scope of his work, what he has charged to date and what he plans to charge in the future.

I will meet with you at any time and ask that you refrain from taking any action which would result in a long-term obligation of the corporation until we have a clear understanding of what will be accomplished.

Sincerely,

Wayne Ducote

CC: Mark Stein
Gladstone Jones

**DECATUR REALTY CORPORATION**
425 Kimberly Avenue
Asheville, NC 28804

December 3, 2012

## NOTICE OF SPECIAL MEETING OF SHAREHOLDERS

Wayne Ducote
Suite 2625
601 Poydras Street
New Orleans, LA 70170
(By FedEx Overnight Delivery)

Sidney M. Bach
(By Hand Delivery)

PLEASE TAKE NOTICE that a Special Meeting of the Shareholders of Decatur Realty Corporation will be held on Monday, December 17, 2012 at 11:00 AM in Suite 3600, One Shell Square, 701 Poydras Street, New Orleans.

The purpose of the Special Meeting will be to elect a Director of the Corporation.

DECATUR REALTY CORPORATION

By: _____
Patricia E. Bach, Secretary

EXHIBIT
5

**Lynn Swanson**

| | |
|---|---|
| **From:** | Wayne ducote <wducote@aol.com> |
| **Sent:** | Wednesday, December 05, 2012 6:14 PM |
| **To:** | Mark Stein |
| **Cc:** | Gladstone Jones; Lynn Swanson; David Ducote |
| **Subject:** | Decatur Realty |

Mark:

You advised yesterday that the shareholders' meeting scheduled for December 17th was for the sole purpose of electing a single director. You further advised that Sidney Bach will be the only nominee and will immediately begin to serve as the sole director, at which time he will hold a directors meeting at which he will elect himself President. You further advised that I, as the owner of 40% of Decatur Realty, will have no position either as director or officer of the corporation. If it is the intention of Sidney, the 60% shareholder, to nominate and elect himself as the sole director, there is no need to have a shareholders' meeting.

Further, this will serve to acknowledge and confirm that you, as counsel for both Decatur Realty Corporation and Sidney Bach, informed me yesterday that the corporation will not provide me with historical documents or accountings despite my 40% ownership in Decatur Realty. You furthermore represented to me that within weeks the corporation will be "squeaky clean". Please allow this email to serve as a formal written request for the production of the existing books and accounting records of Decatur Realty Corporation, along with its current and proposed leases and insurance policies.  I expect that, to the extent that they are available, these documents will be produced for my review on or before December 17, 2012.

Finally, in answer to your direct question during our meeting, I have no interest whatsoever in converting from a C-Corp to S-Corp status.

Wayne Ducote
601 Poydras Street, Suite 2625
New Orleans, LA 70130
504-525-9017 office
970-948-4018 cell
wducote@aol.com

1



EXHIBIT

6

**Lynn Swanson**

| | |
|---|---|
| **From:** | Wayne ducote <wducote@aol.com> |
| **Sent:** | Friday, December 07, 2012 3:37 PM |
| **To:** | Mark Stein |
| **Cc:** | Gladstone Jones; Lynn Swanson |
| **Subject:** | Decatur Realty Corporation Shareholders' Meeting |
| **Attachments:** | Decatur Realty Corporation.12.07.12.pdf |

Mark,

I have attached a PDF version of my email below for you convenience.

You advised that the Shareholders meeting proposed for December 17, 2012, would have only one item on the agenda: to elect Sidney Bach as the sole director. However, I have reviewed again the October 1, 2012 notice of the Annual Shareholders meeting sent to my predecessors in title, and believe that a Shareholders meeting should be held immediately to discuss the items on that agenda that were deferred during our October 23 Shareholders meeting. The agenda presented for the meeting held October 23 included the following items to be presented for consideration to the Shareholders:

1. Proposed sale and transfer of the 60% majority interests in the Corporation.

2. Ratification of Minutes from the Special Meeting of the Shareholders of DRC held, after due notice, on January 18, 2012.

3. Nomination and election of the Officers and Directors of the Corporation to serve in such capacities from January 1, 2013, to December 31, 2013, or until such time as they may resign and/or are replaced prior to the expiration of their terms in the event of a change in ownership of the 60% majority interest in the Corporation.

4. Authorization for the President of the Corporation to renew the current lease for the operation of its Conti Street parking lot for a period of one (1) year, subject to the right of the Corporation to cancel that lease upon giving a 30-day notice to the lessee in the event of a change in the ownership of the Corporation's 60% majority shareholder interest.

5. Discussion of the estimated costs for necessary structural repairs to preserve the building at 413-415 Decatur and to authorize such repairs at this time.



6.  Discussion of the recent increases in property tax assessments of the Corporation's properties by the Assessor of Orleans Parish.

7.  Authorization for the suspension of any further dividend payments by the Corporation for the year 2012 due to the anticipated costs for building repairs as well as the recent increases in assessments for property taxes that will become due in January 2013.

8.  Authorization for an increase in the Corporation's management fee to $1,000.00 per month, exclusive of reimbursements for necessary expenses that may be incurred from time to time on behalf of the Corporation.

9.  Authorization for the Corporation to provide Officers and Directors liability insurance coverage, such coverage not to exceed the sum of $2,000,000.

10. Consideration of any and all other matters which may be necessary and appropriate.

At the October 23 Shareholders meeting, the minutes from the January 18, 2012, meeting (item 2) were ratified. Item 3 was addressed and two directors were elected: Sidney Bach and his wife. Discussions were held on items 6 and 7 but no action was necessary. Agenda item 8 was also discussed and approval was granted to increase the Corporation's management fee to $1,000.00. Additionally, a vote was taken on item 9 to provide Officers and Directors with liability insurance coverage, which passed. Action on items 1, 4 and 5, however, was deferred until a future meeting.

I believe that we should have a Shareholders meeting immediately to discuss the unresolved issues from the October 23 meeting as well as to discuss the parking lot and building lease, as they are set to expire December 31, 2012. We should meet as soon as possible and before December 17, if possible. To that end, I am available to meet with Mr. Bach any day next week (December 10-14).

Please advise as soon as possible when the Shareholders meeting can be scheduled and provide me with a proposed agenda. Thank you.

Wayne Ducote

KD Gretna

Wayne Ducote
601 Poydras Street
Suite 2625
New Orleans, LA 70130
504-525-9017 office
970-948-4018 cell
wducote@aol.com

LOWE, STEIN, HOFFMAN, ALLWEISS & HAUVER, L.L.P.

ATTORNEYS AT LAW

ONE SHELL SQUARE

SUITE 3600

701 POYDRAS STREET

NEW ORLEANS, LOUISIANA 70139-7735

WWW.LOWESTEIN.COM

TELEPHONE (504) 581-2450

FACSIMILE (504) 581-2461

WRITER'S E-MAIL:

mstein@lowestein.com

ROBERT C. LOWE
MARK S. STEIN*
MITCHELL J. HOFFMAN*
MAX J. COHEN(1)
DAVID M. PRADOS†
SUZETTE MARIE SMITH†
MARYNELL L. PIGLIA
PAULA H. LEE
JEFFREY M. HOFFMAN
JAMES T. BUSENLENER(1)
GREGORY S. MARSIGLIA
KIM N. NGUYEN
MELVIN D. ALBRITTON
MELANIE C. LOCKETT
TYLER J. DOUGLAS

TERENCE L. HAUVER
(1947-2002)

OF COUNSEL
MARK S. GOLDSTEIN
ALICIA M. BENDAÑA
ELLEN WIDEN KESSLER

* LL.M. IN TAXATION
† BOARD CERTIFIED TAX ATTORNEY
CERTIFIED BY THE LOUISIANA BOARD OF LEGAL SPECIALIZATION
‡ BOARD CERTIFIED FAMILY LAW SPECIALIST
CERTIFIED BY THE LOUISIANA BOARD OF LEGAL SPECIALIZATION
* A PROFESSIONAL LAW CORPORATION
(1) ALSO ADMITTED IN TEXAS
(2) ALSO ADMITTED IN ILLINOIS

December 10, 2012

Wayne C. Ducote, Esq.
Park 1, LLC.
601 Poydras Street, Suite 2625
New Orleans, Louisiana 70130-6029

     Re:    Decatur Realty Corporation
            Our File No. 8846-12419

Dear Wayne:

     I am writing in response to your memo dated December 7, 2012, concerning Decatur Realty Corporation.

     The Notice of the shareholders meeting on December 17, 2012, has, as its sole purpose, the election of a director for the Corporation.

     Sidney and I are willing to meet with you and your attorney after the meeting to address the other items contained in your memo.

                    Very truly yours,

                    Mark S. Stein

MSS/apd
cc:   Gladstone N. Jones, III, Esq.
      Mr. Sidney Bach

EXHIBIT

8

**Lynn Swanson**

| | |
|---|---|
| **From:** | Lynn Swanson |
| **Sent:** | Thursday, December 13, 2012 8:00 AM |
| **To:** | 'mstein@lowestein.com' |
| **Subject:** | Re: Decatur |

Mark:
Thank you very much. I'll be in touch.
Lynn E. Swanson
Jones, Swanson, Huddell & Garrison, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: 504.523.2500
Facsimile: 504.523.2508

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice:  To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Stein, Mark [mailto:mstein@lowestein.com]
**Sent:** Thursday, December 13, 2012 07:51 AM
**To:** Lynn Swanson
**Cc:** Sidney Bach (smbach@bellsouth.net) <smbach@bellsouth.net>
**Subject:** Decatur

Lynn

If it is possible it would be much better for me to have the hearing tomorrow instead of today.  The only thing I have on my calendar tomorrow is an appointment at 11 with a client from out of town.

You have my representation and assurance that neither Decatur not Sidney will take any action which would be enjoined if your TRO is granted until the hearing is held.

**MARK S. STEIN**
ATTORNEY
**LOWE STEIN**
HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450

1


EXHIBIT
9
(ngʃobn)

Facsimile: 504-581-2461
Direct Facsimile: 504-589-0233
Email: mstein@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**Lynn Swanson**

| | |
|---|---|
| **From:** | Lewis, Tammie <tlewis@lowestein.com> |
| **Sent:** | Thursday, December 13, 2012 11:48 AM |
| **To:** | Lynn Swanson |
| **Cc:** | Hoffman, Mitch; Stein, Mark |
| **Subject:** | see letter from Mitch Hoffman, re: KD Gretna v. Decatur Realty and Sidney Bach |
| **Attachments:** | swansonltr.pdf |

TAMMIE LEWIS
LEGAL ASSISTANT

# LOWE STEIN

HOFFMAN ALLWEISS & HAUVER LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Facsimile: 504-581-2461
Email: tlewis@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.   If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

LOWE, STEIN, HOFFMAN, ALLWEISS & HAUVER, L.L.P.

ATTORNEYS AT LAW

ONE SHELL SQUARE

SUITE 3600

701 POYDRAS STREET

New Orleans, Louisiana 70139-7735

WWW.LOWESTEIN.COM

TELEPHONE (504) 581-2450

FACSIMILE (504) 581-2461

WRITER'S E-MAIL:

Mhoffman@lowestein.com

ROBERT C. LOWE†
MARK S. STEIN*‡
MITCHELL J. HOFFMAN*†
MICHAEL R. ALLWEISS(2)
MAX J. COHEN(1)
DAVID M. PRADOS†
SUZETTE MARIE SMITH†
MARYNELL L. PIGLIA
PAULA H. LEE
JEFFREY M. HOFFMAN
JAMES T. BUSENLENER(1)
GREGORY S. MARSIGLIA
KIM N. NGUYEN
MELVIN D. ALBRITTON
MELANIE C. LOCKETT
TYLER J. DOUGLAS

TERENCE L. HAUVER
(1947-2002)

OF COUNSEL
MARK S. GOLDSTEIN
ALICIA M. BENDANA
ELLEN WIDEN KESSLER

* LL.M. IN TAXATION
‡ BOARD CERTIFIED TAX ATTORNEY
CERTIFIED BY THE LOUISIANA BOARD OF LEGAL SPECIALIZATION
† BOARD CERTIFIED FAMILY LAW SPECIALIST
CERTIFIED BY THE LOUISIANA BOARD OF LEGAL SPECIALIZATION
*A PROFESSIONAL LAW CORPORATION
(1) ALSO ADMITTED IN TEXAS
(2) ALSO ADMITTED IN ILLINOIS

December 13, 2012

Via email lswanson@jonesswanson.com
Lynn E. Swanson
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130

       Re:    KD Gretna Properties, LLC v. Decatur Realty Corp. and Sidney Bach

Dear Lynn:

As you know, we represent Decatur Realty Corporation and Sidney Bach. We have reviewed your Petition for Preliminary and Permanent Injunction and Motion for Temporary Restraining Order.

We find that many of the allegations in the pleading are untrue and defamatory. We will address that issue at the appropriate time.

In the meantime, in order to avoid having to spend time and energy in Court, Decatur Realty suggests the following:

1.    It will include items 1, 4 and 5 from the October 1, 2012 Notice as agenda items at the Shareholders meeting for December 17, 2012. The agreement to discuss agenda items 1, 4 and 5 at the Shareholders' meeting should not be deemed an admission that these are items that are properly brought before the Shareholders. Decatur Realty and Mr. Bach reserve their right with respect to agenda items and whether such agenda items are appropriate for Shareholder action for subsequent Shareholder meetings;

2.    Decatur Realty Corp. will not enter into a lease renewal with 519 Conti Street Limited until the matter can be addressed at the Shareholders' meeting;

3.    Decatur Realty Corp. and Mr. Bach request that you strike any language in your Verified Petition for Preliminary and Permanent Injunction and Motion for Temporary Restraining Order that suggests to the Court in any way that Decatur

LOWE, STEIN, HOFFMAN,
ALLWEISS & HAUVER, L.L.P.
ATTORNEYS AT LAW

Lynn E. Swanson
December 13, 2012
Page 2

Realty Corp. and/or Sidney Bach had expressed or had any intention to alter or destroy corporate records. We believe those allegations to be defamatory and damaging to Decatur Realty Corp. and Mr. Bach; and

4.   Mr. Ducote's offer through KD Gretna to lease the parking property for $4,000.00 will be considered. Does Mr. Ducote believe that $4,000.00 is fair market value for the property?

In view of these proposals, we would ask that you defer your request for a temporary restraining order until after the Shareholders meeting on December 17, 2012.

I look forward to your prompt reply.

With kind regards, I am

Very truly yours,

Mitchell J. Hoffman

MJH/tl

cc:   Mark Stein
      Sidney Bach

**Lynn Swanson**

| | |
|---|---|
| **From:** | Hoffman, Mitch <mhoffman@lowestein.com> |
| **Sent:** | Friday, December 14, 2012 2:20 PM |
| **To:** | Lynn Swanson |
| **Cc:** | Stein, Mark; Gladstone Jones; Kerry Murphy; smbach@bellsouth.net; Oufnac, Katherine |
| **Subject:** | RE: KD Gretna Properties, LLC v. Decatur Realty Corp., et al. |

Lynn

Since Mr Ducote offered to lease the parking lot for $4000 per month, what terms did he contemplate on his offer?  I think that is a more relevant question than the terms of an existing lease which is about to terminate or a renewal that is not going to happen.  Mr Ducote knows the parking lot business and is familiar with standard lease provisions.

I can confirm that no lease will be executed before the meeting.

We need to discuss the other questions with Mr Bach before I can respond.

Mitch

**MITCHELL J. HOFFMAN**
ATTORNEY

# LOWE STEIN

HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Direct Telephone: 504-589-0219
Facsimile: 504-581-2461
Direct Facsimile: 504-589-0250
Email: mhoffman@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.  If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**From:** Lynn Swanson [mailto:LSwanson@jonesswanson.com]
**Sent:** Friday, December 14, 2012 12:16 PM
**To:** Hoffman, Mitch
**Cc:** Stein, Mark; Gladstone Jones; Kerry Murphy
**Subject:** KD Gretna Properties, LLC v. Decatur Realty Corp., et al.

Dear Mitch:

Thank you for your letter of yesterday and it has been a pleasure speaking with you.  As we just discussed, KD Gretna will defer its request for a temporary restraining order until after the Shareholders' meeting on Monday, December 17, 2012.

1



EXHIBIT

1D

With regard to the parking lot lease, please allow this email to confirm that Decatur will not enter into <u>any</u> lease of the parking lot before Monday's meeting; your letter was not intended to limit only Decatur's actions with regard to a renewal with 519 Conti Street, Ltd.  Also, I would appreciate if you would get me a copy of the current lease of the parking lot, and, in the event that the renewal terms were already in the process of being renegotiated, any proposed lease of the parking lot.  Finally, I ask that Mr. Bach include on the agenda for Monday's Shareholders' meeting a discussion of the building lease, which I understand will terminate on December 31, 2012.

Thanks again for working through this with me, and I will see you on Monday!

**Lynn E. Swanson**
*Attorney at Law*



601 Poydras Street, Suite 2655 . New Orleans, Louisiana  70130 . Telephone: 504.523.2500 . Facsimile: 504.523.2508 .
LSwanson@jonesswanson.com . jonesswanson.com

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice:  To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

2

Page 1

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   1012-11563

DIVISION "H"

KD GRETNA PROPERTIES,

LLC

VERSUS

DECATUR REALTY GROUP

AND SIDNEY BACH

* * * * * * * *

Decatur Shareholders meeting held at 701
Poydras Street, Suite 3600, New Orleans,
Louisiana 70139, on December 17, 2012.



EXHIBIT

tabbies®   11

Page 2

```
1   APPEARANCES:
2
3   LOWE, STEIN, HOFFMAN, ALLWEISS & HAUVER, LLP
4   BY: MARK S. STEIN, ESQUIRE
5   By: MITCHELL HOFFMAN, ESQUIRE
6   701 Poydras, Suite 3600
7   New Orleans, Louisiana 70139
8
9
10  JONES, SWANSON, HUDDELL & GARRISON
11  BY: LYNN E. SWANSON, ESQUIRE
12  601 Poydras Street, Suite 2655
13  New Orleans, Louisiana 70130
14
15
16  YOLANDA BERNARD
17  WAYNE DUCOTE
18  610 Poydras Street, Suite 2625
19  New Orleans, Louisiana 70170
20
21
22  REPORTED BY:
23    Ben C. Fulkerson, II
24    Certified Court Reporter
25
```

Page 4

```
1   MR. BACH:
2      I call this special meeting to order
3   and this is a special meeting of the
4   shareholders of Decatur Realty Corporation
5   that was called pursuant to due notice issued
6   on December 3, 2012.
7      If you want to attach this as an
8   exhibit to the deposition record or transcript
9   of these proceedings and we can address that.
10     MR. STEIN:
11     Before we do anything else, we have
12  asked the Court Reporter to be here because of
13  several factors, the first one is because of
14  the existing litigation; and secondly, what we
15  feel is threatened litigation and certainly
16  because of the inaccuracies contained in
17  memorandums and documents already filed with
18  the court, and we want to make sure we have an
19  accurate transcript of everything that is
20  said.  While this is not a deposition, I would
21  ask not to step on each other so that the
22  Court Reporter can get it down, and other
23  that, forget the Court Reporter is here.
24     MR. BACH:
25     I'm going to call the meeting to
```

Page 3

```
1           I-N-D-E-X
2
3   CAPTION               1
4
5   TESTIMONY             4
6
7   REPORTER'S CERTIFICATE    44
8
9
10
11
12        E-X-H-I-B-I-T-S
13
14  Exhibit No. 1:  Copy of Special Meeting.
15  Exhibit No. 2:  E-mail of December 13, 2012.
16  Exhibit No. 2-A:  E-mail of December 14, 2012.
17
18
19
20
21
22
23
24
25
```

Page 5

```
1   order.  My name is for the record Sidney M.
2   Bach, B-A-C-H.
3      I'm currently the director and
4   president of Decatur Realty Corporation and of
5   the 106 shares that were authorized and/or
6   outstanding approximately 60 percent owned by
7   myself, Sidney Bach, and the approximate 40
8   percent that was recently acquired by KD
9   Gretna, LLC, which is represented here today
10  by its managers are all present, so we have
11  all of the shareholders present for this
12  special meeting.
13     This special meeting was called --
14  I'm Sidney Bach.  I think I identified myself.
15     MS. SWANSON:
16     I'm Lynn Swanson.  I represent KD.
17     MR. DUCOTE:
18     I'm Wayne Ducote, manager, KD.
19     MS. BERNARD:
20     Yolanda Bernard, manager KD Gretna.
21     MR. DUCOTE:
22     I want to make a correction to Mr.
23  Bach.  It's 59 percent.  Less than 60 percent.
24     MR. BACH:
25     I said approximately 60 percent.
```

2  (Pages 2 to 5)

Page 6

1   MR. HOFFMAN:
2       Mitchell Hoffmann representing
3   Decatur.
4   MR. STEIN:
5       Mark Stein representing Decatur.
6   MR. DUCOTE:
7       You gentlemen are both representing
8   Decatur?
9   MR. HOFFMAN:
10      Yes, sir.
11  MR. BACH:
12      This special meeting was called, as
13  the notice indicates, for the sole purpose of
14  electing the corporation's director.
15      The shareholders have agreed however
16  that other specific items may be discussed
17  following the election of the corporation's
18  director.
19      Those items were set forth in a
20  letter dated December 13, 2012 to Ms. Swanson
21  by Mitchell J. Hoffman, a copy which I ask
22  that you attach to the transcript as Exhibit
23  2.
24  MR. BACH:
25      I would ask at this time,

Page 7

1   let's proceed with the nominations for
2   director --
3   MS. SWANSON:
4       May I interrupt you?  On December
5   14th, Mr. Hoffmann sent me an e-mail that also
6   added the discussion of the building lease to
7   the agenda.
8   MR. HOFFMAN:
9       That's correct.
10  MR. BACH:
11      I would suggest that we proceed with
12  the nominations for the director and then any
13  discussion that is to be had on those items
14  will follow.
15      Any nominations?  I open the floor
16  for nominations for director.
17      I nominate Sidney M. Bach to serve as
18  the director of Decatur Realty Corporation for
19  a period of one year or until a successor is
20  elected prior to the expiration of that term.
21  After the expiration of that term.
22  MR. DUCOTE:
23      Does he need a second?
24  MR. STEIN:
25      No.

Page 8

1   MR. DUCOTE:
2       I nominate Wayne Ducote.
3   MR. BACH:
4       I cast all of my votes for Sidney M.
5   Bach to be the sole director.
6   MR. DUCOTE:
7       I guess all of my votes are against.
8   MR. STEIN:
9       You want a separate vote on you?
10      Okay.  I vote on Wayne Ducote as
11  director.
12  MR. BACH:
13      I vote aLl of my shares against that.
14  MR. DUCOTE:
15      All of mine for that.
16  MR. BACH:
17      At this point and time based upon the
18  shares outstanding and the votes as expressed
19  by majority votes, Sidney M. Bach is elected
20  to be the director of Decatur Realty
21  Corporation for the period of one year or
22  until a successor is elected.
23  MR. DUCOTE:
24      In reference, may I ask a question?
25  With regard to directors up until recently, up

Page 9

1   until recently Patricia Bach was the director.
2   MR. STEIN:
3       I understand that a meeting was held
4   sometime in October.
5       We believe that because of some
6   possible deficiencies in calling that
7   meeting -- that's why we are having this
8   meeting, and there was a vote at that point,
9   and as I understand it, she was theoretically
10  elected as a director if the technicalities of
11  that meeting were proper, and she has since
12  resigned.
13  MR. DUCOTE:
14      She was a director on the corporate
15  report that was filed in April of 2012, for
16  the prior year, if she voted on any actions
17  what is the status of the actions she voted on
18  when she was a director and she did not own a
19  share of stock?
20  MR. STEIN:
21      With all due respect, Mr. Ducote,
22  owning a share of stock has nothing to do with
23  being the director.
24  MR. DUCOTE:
25      Yes, it does.

3 (Pages 6 to 9)

Page 10

1  MR. STEIN:
2      That's your opinion, sir.
3  MR. DUCOTE:
4      In the corporate documents filed in
5  1948 it says you have to own one share of
6  stock to be a director.
7  MR. STEIN:
8      Without verifying what you're asking
9  me, I can't answer that question. I'm not
10  going to make a decision on that. It's
11  irrelevant for purposes of this meeting. It's
12  not on the call for the meeting or the items
13  we agreed to discuss.
14  MR. DUCOTE:
15      All right.
16  MR. STEIN:
17      For the record, you do not own any
18  stock in this corporation until approximately
19  October 2012; is that correct?
20  MR. DUCOTE:
21      Correct.
22  MR. BACH:
23      In view of the pending litigation, I,
24  as the majority shareholder of Decatur Realty
25  Corporation have chosen to file against the

Page 11

1  Decatur Realty Corporation, and against
2  myself. I think it perhaps more appropriate
3  that I turn this special meeting over to the
4  corporation counsel, Mark Stein, Esquire.
5  MR. STEIN:
6      One of the issues, I think, in the
7  letter that we agreed to was the parking lot
8  lease. We agreed to discuss that, and I'm
9  turning it over to you, Mr. Ducote. What
10  would you like to discuss?
11  MR. DUCOTE:
12      At the proposed agenda on October
13  1st, to my successors in the meeting that we
14  did have which Ms. Bernard and I attended on
15  October 25th, Mr. Bob made a motion to renew
16  the existing parking lot lease on the Conti
17  Street property, which I didn't see for the
18  sum of $2,000.
19      We decided to defer that lease
20  because I don't think -- I thought it was
21  inappropriate and I would like to review it so
22  we did defer it.
23      He again wants to lease the property,
24  and in a letter that I send to you, I said I
25  would pay $4,000.

Page 12

1  MR. BACH:
2      You're offered to lease the property
3  for $4,000.
4      What are the terms of that lease?
5  MR. DUCOTE:
6      A month.
7  MR. STEIN:
8      Irrelevant, Mr. Ducote. You're a
9  parking lot operator. The terms of the party
10  is no --
11  MR. DUCOTE:
12      KD is no parking lot operator, Mr.
13  Stein. I own interests in parking properties.
14  MR. STEIN:
15      As I well know. However, terms of --
16  MR. DUCOTE:
17      Decatur.
18  MR. STEIN:
19      The terms of the prior lease are
20  irrelevant to the terms. This is going to be
21  a triple net lease.
22  MR. DUCOTE:
23      For the parking property?
24  MR. STEIN:
25      Yes. As tenant, would you plan on

Page 13

1  making improvements to the property?
2  MR. DUCOTE:
3      Depends of the terms of the lease.
4  MR. BACH:
5      That's $4,000 just for the record.
6  MR. STEIN:
7      $4,000 a month.
8      Anything else, Mr. Ducote?
9  MR. DUCOTE:
10      That was a comparative offer compared
11  to what Mr. Bach had been paying for the last
12  decade.
13  MR. STEIN:
14      When you say comparative, is it your
15  position that $4,000 is not the fair market
16  value for the rental?
17  MS. DUCOTE:
18      Didn't say it was, didn't say it was
19  not.
20  MR. BACH:
21      But you did offer $4,000?
22  MR. DUCOTE:
23      I did. I said 2000 was not.
24  MR. STEIN:
25      That's fine. I just want to get that

4 (Pages 10 to 13)

Page 14

1  on the record.
2      Do you have any concept of what the
3  fair market value is for the rental of that
4  parking lot?
5      MR. DUCOTE:
6      More than $2,000.
7      MR. STEIN:
8      Do you have any other concept about
9  what it's worth?
10     MR. DUCOTE:
11     Would it be the corporation's concept
12 for me to --
13     MR. STEIN:
14     Do you have any concept of what the
15 fair market value is for the rental of that
16 parking lot?
17     MR. DUCOTE:
18     No.
19     MR. BACH:
20     Anything else?
21     MR. HOFFMAN:
22     Can I ask a question?  I don't mean
23 to interrogate.
24     MR. STEIN:
25     I don't either.  I'll try to make it

Page 15

1  more conversational.
2      MR. HOFFMAN:
3      I know you own interests in parking
4  lots.  As a shareholder, 39 percent whatever
5  shareholder, do you think the offer you made
6  of $4,000 a month is a fair offer for that
7  parking lot?
8      MR. DUCOTE:
9      Based on the information that I have
10 that Mr. Bach has been paying half of that
11 amount for ten years, it's fair to the
12 corporation.
13     The question I have is Mr. Bach is in
14 the parking business with 519 Conti; Decatur
15 Realty is in the business of renting real
16 estate.  They have two assets, and Mr. Bach is
17 renting one of those assets to himself.  I own
18 40 percent of this corporation, and he owns
19 60.  I own a little more than 40 and he owns a
20 little less than 60, and I don't see any
21 reason other than what's perhaps in
22 Mr. Stein's law books, if he's willing to find
23 it, as to why I can't find out or why it's not
24 disclosed to me what a competing offer is when
25 I'm going to share and enjoy the benefits of

Page 16

1  parking such as Mr. Bach.
2      MR. STEIN:
3      Let me respond to that.
4      You came into the corporation as a
5  shareholder threatening litigation and trying
6  to intimidate Mr. Bach telling me that you
7  were going to litigate unless you could,
8  quote, give up your legacy rights if Mr. Bach
9  would sell you his interest in the
10 corporation.
11     MR. DUCOTE:
12     I did not threaten with litigation,
13 Mr. Stein.  We were both in the office.
14     MR. STEIN:
15     Right.  At that meeting and a prior
16 meeting, I advised you that normally when a
17 shareholder comes into a corporation not
18 withstanding the legal requirement, that I
19 would advise a client to try to be
20 cooperative.  But in this case because of your
21 having filed the litigation, and what I
22 believed to be a threat, I told you and Glad
23 Jones and Lynn at the prior meeting that the
24 Louisiana law absolutely provides that a
25 shareholder most hold stock for at least six

Page 17

1  months before that shareholder is entitled to
2  any records of the corporation, and I told you
3  that the corporation would provide you with
4  any records that you're entitled to when and
5  if the law says you're entitled to it, and
6  nothing more.  That's the position of the
7  corporation at this time.
8      MR. DUCOTE:
9      I understand that.
10     MR. STEIN:
11     And I also at the prior meeting and
12 subsequently said to Lynn and Mr. Jones a
13 legal treatise on the requirements for filing
14 a derivative action suit.
15     MR. DUCOTE:
16     Correct.
17     MR. STEIN:
18     So I'm answering your question as to
19 why we are not giving you records today.
20     MR. DUCOTE:
21     Based on what I saw and the records
22 provided to my predecessor which were several
23 tax returns and a couple sheets of
24 distribution, they did not have any annual
25 reports, which I am a shareholder and entitled

5  (Pages 14 to 17)

Page 18

1   to immediately, the final annual report for
2   the last year and four months prior to my
3   purchase to that, and I'm entitled to that
4   today.
5       MR. STEIN:
6       Get it from the Secretary of State's
7   office.
8       MR. DUCOTE:
9       You don't have one filed with the
10  Secretary of State. You don't have a
11  financial report filed with the Secretary of
12  State.
13      MR. STEIN:
14      That's not a requirement to file a
15  report with the --
16      MR. DUCOTE:
17      There's a requirement for the
18  corporation to provide the shareholder with an
19  annual report. I have it somewhere and I'll
20  find it.
21      MR. STEIN:
22      You have only been a shareholder for
23  two months.
24      MR. DUCOTE:
25      You don't have to be a shareholder to

Page 19

1   get the report. To get the annual report, you
2   can get it immediately.
3       MR. STEIN:
4       There has been no annual report
5   prepared since you've been a shareholder.
6   You're not getting any documents except those
7   to which the law says you're entitled; and if
8   the law says you're entitled to a financial
9   report, then you will be provided one when
10  it's prepared.
11      MS. SWANSON:
12      I have a question about the parking
13  lot lease.
14      Wouldn't it make sense for Mr. Ducote
15  to see the lease to see if there is a way to
16  improve the lease based on his experience?
17      MR. STEIN:
18      If he has experience in the parking
19  lot business, then he should know how to do
20  it. He's visited the property and he knows
21  how many cars, and we are not providing -- let
22  me repeat this again.
23      Mr. Ducote will not be provided any
24  documents of this corporation until the law
25  requires that he receive them and only those

Page 20

1   documents the law requires that the
2   corporation give to him.
3       MR. DUCOTE:
4       Is Mr. Bach going to withdraw his
5   request to approve a renewal of this lease for
6   $2,000 a month?
7       MR. STEIN:
8       It's not before this meeting.
9       MR. DUCOTE:
10      It was on the agenda for October
11  25th. It was not acted on and it was deferred
12  and it's now removed from this current agenda.
13      MR. STEIN:
14      It is not on the agenda for this
15  meeting.
16      MR. DUCOTE:
17      How are you going to act on the
18  October 25th motion to renew the lease for
19  $2,000? Are you removing that from the
20  agenda?
21      MR. STEIN:
22      The shareholders will not vote on the
23  renewal of a lease.
24      MR. DUCOTE:
25      That will be done by directors

Page 21

1   solely? MR. STEIN:
2       Yes.
3       MR. DUCOTE:
4       And it may or may not go to Mr.
5   Bach? It could go to a third party or it may
6   go to someone else?
7       MR. STEIN:
8       It could go to anyone. It could go
9   to you.
10      MR. DUCOTE:
11      Well, would $4,000 be adequate to get
12  the lease to me?
13      MR. STEIN:
14      The corporation would have considered
15  that, Wayne. We didn't know the terms.
16      I don't know the terms of what are
17  there right now.
18      I don't understand why, but we have
19  already been through this discussion.
20      MR. DUCOTE:
21      All right.
22      MR. STEIN:
23      Okay.
24      Anything more than on the parking lot
25  lease?

6 (Pages 18 to 21)

Page 22

1      MR. DUCOTE:
2          So you're going to consider a $4,000
3   triple net from me, as I understand it?
4      MR. STEIN:
5          I'm not. The director is.
6      MR. DUCOTE:
7          Compared to what he probably has been
8   paying and whatever other offers and make a
9   decision based on the best interest of the
10  corporation?
11     MR. STEIN:
12         Mr. Bach will make the decision based
13  on the best interest of the corporation but in
14  his business judgment is appropriate.
15     MR. DUCOTE:
16         Without any prior commitments that he
17  had to other parties?
18     MR. STEIN:
19         Wayne, we're not going to answer any
20  questions we don't have to answer, and you as
21  a shareholder have no right to decide or vote
22  or put any input into what is that lease,
23  period.
24     MR. DUCOTE:
25         What is the term of the new lease

Page 23

1   going to be?
2      MR. STEIN:
3          We are not giving you any information
4   with respect to any new leases that may or may
5   not occur.
6      MR. HOFFMAN:
7          What was the term of your offer?
8      MR. DUCOTE:
9          I hadn't put a term on it. I would
10  think ten years. But if I was going to come
11  with something for ten years, there is a
12  number of terms in the lease which need to be
13  addressed.
14     MR. HOFFMAN:
15         Okay.
16     MR. DUCOTE:
17         I can enumerate what needs to be
18  done, but you know as a lawyer what needs to
19  be done. I think I should have some input
20  into what that way should be.
21     MR. STEIN:
22         You think you should and that's fine,
23  but not according to law.
24     MR. DUCOTE:
25         I understand that according to you.

Page 24

1      MR. STEIN:
2          That's correct.
3      MR. DUCOTE:
4          How many assets does the corporation
5   own? Am I entitled to know that?
6      MR. STEIN:
7          We're not going to give you any
8   information concerning the corporation until
9   you're required to have it and when you're
10  required to have it. You could have asked for
11  all that information before you bought the
12  shares and you chose not to.
13     MR. DUCOTE:
14         I have reason to believe the
15  corporation has three assets; cash, a parking
16  lot and a building.
17     MR. BACH:
18         I think we agreed to have a
19  discussion on the three items that Mr. Ducote
20  referred. I really don't want to go beyond
21  those three items.
22     MR. STEIN:
23         Sidney is correct, the agenda is
24  limited to the collection of directors and
25  those four items that we agreed would be

Page 25

1   discussed at the meeting and no other issues
2   will be discussed.
3      MR. DUCOTE:
4          So no actions are going to be taken
5   on the items discussed? We've discussed the
6   parking --
7      MR. STEIN:
8          By the shareholders, not as far as
9   we're concerned.
10     MR. DUCOTE:
11         So you're not ready to take a vote on
12  a parking lease at this meeting?
13     MR. STEIN:
14         There's no motion.
15     MR. DUCOTE:
16         I move we lease it to an entity
17  controlled or owned by me for $4,000 a month.
18     MR. STEIN:
19         With all due respect to you, the
20  directors were solely responsible for the
21  management and the day-to-day operations of
22  the corporation, and this is an inappropriate
23  motion by the shareholder and it will not be
24  considered.
25     MR. SWANSON:

7 (Pages 22 to 25)

Page 26

1    So we are not getting this
2  information because it's provided by law and I
3  understand that part.  Can that be waived if
4  you choose to?
5    MR. STEIN:
6    Absolutely.
7    MS. BERNARD:
8    But you've chosen not to.
9    MR. STEIN:
10    We've chosen not to because of the
11  actions of KD from the time KD has acquired
12  the stock in this company, and in order to
13  protect the company's rights and Mr. Bach's
14  obligations and rights as a fiduciary
15  director, and I told Wayne, lynn and Glad that
16  we are going to follow the letter of the law.
17    MR.BACH:
18    I want to make it clear as the
19  director of Decatur Realty Corporation that
20  any and all documentation regarding Decatur
21  Realty Corporation to which your company is
22  entitled by law will be made available,
23  period.
24    And in addition to that period, I
25  would add that it will be made available at

Page 27

1  such as the law requires it to be made.
2    MS. BERNARD:
3    You said six months.
4    MR. BACH:
5    Whatever counsel says it is.  And I
6  would like to also add that this approach
7  would not have been of my choosing had
8  Mr. Ducote not come into the corporation
9  figuratively with guns blazing and so he can
10  thank himself for the position that he is in.
11    MR. STEIN:
12    You can stop.
13    Anything else to discuss or do you
14  want to go --
15    MR. DUCOTE:
16    One issue about the records.
17    There is a provision in the law where
18  the corporation is required to provide me --
19  and are you telling me you don't have it or
20  you won't give it to me or both?
21    MR. STEIN:
22    Neither.  What I'm telling you is
23  that I will look at the law; and if that's in
24  the law, then you would be provided that
25  report when you're entitled to it.

Page 28

1    I'm not going to look at it today,
2  Wayne, and you can pull it out all you want.
3  And I also want to note for the record that
4  this is the first time specifically asked --
5  are you talking about the annual report that's
6  filed with the Secretary of State?
7    MR. DUCOTE:
8    It sets forth financial data.
9    I have it.
10    MR. STEIN:
11    I'm not going to look at it today.
12    We'll look at the law and this is the
13  first time that you have requested this
14  information, and if you're entitled to it, you
15  will get it.
16    MR. DUCOTE:
17    To finish with the parking lot lease,
18  this is a discussion we have, there will no
19  vote by the shareholders and Mr. Bach is the
20  sole director and he'll make a decision for a
21  long-term lease or a short-term lease on the
22  property to a candidate of his choosing?
23    MR. STEIN:
24    Mr. Bach will make a decision on a
25  lease with a tenant of his choosing.

Page 29

1    MR. DUCOTE:
2    Which is in the best interest of the
3  corporation?
4    MR. STEIN:
5    Absolutely.
6    MS. SWANSON:
7    When will that vote take place?
8    MR. STEIN:
9    I have no idea.
10    MS. SWANSON:
11    Is the parking lot lease up at the
12  end of the month?
13    MR. STEIN:
14    I don't know.
15    MR. DUCOTE:
16    Yes, it is.  Mr. Bach told me that at
17  the end of the year.  He was paying 2,000 a
18  month, and it expired on December 31st.
19    MR. STEIN:
20    And I assume if Mr. Bach told you
21  that, then it's correct.
22    MR. DUCOTE:
23    Is it going to continue on a
24  month-to-month basis or is he going to execute
25  a new lease or are you not telling me at all?

8 (Pages 26 to 29)

Page 30

```
1      MR. STEIN:
2         You can ask the questions all kind of
3   different ways, and we're not providing any of
4   that information.
5      MR. DUCOTE:
6         Let the record reflect that as a 40
7   percent shareholder, I will not have any
8   information about a long-term lease on a piece
9   of property owned by Decatur Realty.
10     MR. STEIN:
11        You will be provided the information
12  that you are legally entitled to have when the
13  law requires you to have it.
14     MR. DUCOTE:
15        I understand it, and Mr. Bach
16  according to counsel has a right to execute a
17  long-term lease with a third party tenant and
18  I'll have no knowledge of what he is going to
19  do until after it's done unless Mr. Stein
20  finds the law and allows me to get at that
21  information prior to the execution of the
22  lease.
23     MR. STEIN:
24        I had asked both of your attorneys if
25  they could provide me with contrary authority,
```

Page 32

```
1         Excuse me for a second.
2         Right to inspect corporate records.
3   Every corporation and every foreign
4   corporation doing business in the states shall
5   once in every calendar year upon the written
6   request of the shareholder of record, which I
7   am of record, deliver to the shareholder a
8   report signed by the president or
9   vice-president or secretary assistant
10  containing the information herein required to
11  be contained in the last annual Report of the
12  Corporation proceeding such request together
13  with a condensed balance sheet showing
14  separately the amounts of stated capital and
15  capital surplus earned as of the last day in
16  the combined statement of income and earned
17  surplus earned for the last proceeding year
18  can be no more than four months before the
19  receipt of such request. There is no
20  restriction on the six month-delay on that.
21     MR. STEIN:
22        Okay. On behalf of the corporation
23  I'll review the statue. The annual report is
24  available online at the Secretary of State's
25  office, and we'll provide you with a copy of
```

Page 31

```
1   we would obey.
2         I've given Lynn and Glad the
3   citations to the corporate law, which I'm more
4   than happy to put into the minutes of this
5   meeting if you so wish, and since you studied
6   it so carefully, I assume you read it, also.
7      MR. BACH:
8         What is the next item?
9      MR. STEIN:
10        What do you want to talk about next?
11     MR. DUCOTE:
12        Building lease.
13     MR. STEIN:
14        What do you have?
15     THE WITNESS:
16        As I understand it, the lease is up
17  on December 31st for that as well and I wanted
18  to know what the intent of Mr. Bach was for
19  the building lease.
20     Same response you were given for
21  everything else.
22        I believe that you had stated earlier
23  --
24
25     MR. DUCOTE:
```

Page 33

```
1   it if the law requires, and whatever financial
2   information the law requires will be given to
3   you.
4      MR. DUCOTE:
5         That's 1210-B. Can I ask when that
6   will be provided?
7      MR. STEIN:
8         No.
9      MR. HOFFMAN:
10        You indicated that you haven't made
11  the request yet.
12     MR. DUCOTE:
13        You'll have a request this afternoon.
14     MR. STEIN:
15        I think you can consider this as a
16  request. You don't have to write a formal
17  request. We will consider this a request.
18     MR. DUCOTE:
19        Thank you.
20     MR. STEIN:
21        I'll deliver it to you or the
22  corporation will deliver it to you when the
23  law requires it to be delivered if it requires
24  it to be delivered.
25     MR. DUCOTE:
```

9 (Pages 30 to 33)

Page 34

1     Okay.
2   MR. BACH:
3     What do you have to say about the
4 building lease?
5   MR. DUCOTE:
6     The lease expires on December 31st.
7   MR. STEIN:
8     What I was getting ready to say was
9 you must have a copy of the lease.
10   MR. DUCOTE:
11     Nope. Don't have a copy.
12   MR. STEIN:
13     Okay.
14     We have discussed this earlier and I
15 believe somebody, I think, on at least two
16 occasions, as I understand it, it was
17 discussed with you that the possibility of
18 that lease would be renewed at $10,000 a month
19 and you thought that was reasonable. Other
20 than that, I don't have any other information
21 for you.
22   MR. DUCOTE:
23     You asked me if $10,000 a month was
24 reasonable and I said, "That sounded like it
25 may work, but the tenant is going to require

Page 35

1 some improvements on the building and there's
2 a few other things on the ten-year building
3 lease, unlike a parking lease, like
4 escalations, like terms, like renewals, right
5 of first refusal, definition of triple net,
6 tenant obligations, lessor obligations and
7 building improvements which we will be
8 required to fund insurance, default, security,
9 uses, casualty losses, subleasing transfers,
10 tenant mortgages, maintenance, repairs and
11 remedies.
12     Rent is one item of 30 in a lease.
13   MR. STEIN:
14     First of all, I do want to thank you
15 on that outline on how to draft a lease, and I
16 will absolutely use it the next time I draft a
17 lease.
18   MR. DUCOTE:
19     When you say I said 10,000 was a good
20 number, that was a decent number for a
21 starting number for rent. These terms can
22 make it worth $50 a month or 50,000 a month.
23   MR. STEIN:
24     You told me it was reasonable, but
25 you never mentioned these other items.

Page 36

1   MR. DUCOTE:
2     You said reasonable rent.
3   MR. STEIN:
4     Anything else you would like to
5 discuss on the building lease?
6   MR. DUCOTE:
7     Also on the agenda item was emergency
8 motion on the 25th to -- 23rd or whatever it
9 was, to perform the necessary instruction of
10 repairs to preserve the building at 413
11 Decatur Street, which was $57,000 to replace
12 two panels in front and to jack up a column
13 which allegedly was damaged by the hurricane.
14 I've been to the building. I've been to the
15 roof. I don't know if Mr. Bach has been on a
16 roof like that, but I went up there three r.
17 We have roof damage and I don't know what the
18 status is of the building claim. And I also
19 know that $56,000 to reset that column and to
20 replace the two panels in the front is
21 unnecessary. You don't even have to replace
22 the panels. Take one out and put the other
23 one back in and paint them both.
24     I think that price is excessive and I
25 don't know what else they are going to do when

Page 37

1 there's some other things that we can look at
2 while we are doing it rather than taking one
3 person's price of $56,000 to do some repairs.
4 I'm also sort of familiar with construction as
5 well.
6   MR. STEIN:
7     Man of many talents.
8     We will take all of your comments and
9 Mr. Bach as director will take into
10 consideration all of your comments.
11   MR. DUCOTE:
12     For the record, the discussion as far
13 as the building lease as I understand it is
14 over?
15     Mr. Bach will take my comments, and
16 Mr. Bach is the sole director, perhaps. We'll
17 enter into the long-term lease on the building
18 and the second assets of the corporation on
19 terms he believes are in the best interest of
20 the corporation and we'll undertake whatever
21 repairs are necessary to satisfy the
22 prospective tenant without consultation with
23 his 40.5 percent shareholding.
24   MR. STEIN:
25     With one exception. You said repairs

10 (Pages 34 to 37)

Page 38

1  that are necessary for a long-term tenant in
2  the building.
3      Mr. Bach will make a decision as
4  director as to what repairs should be made to
5  the building under all circumstances.
6      MR. DUCOTE:
7      Okay.
8      MR. STEIN:
9      I think that covers three items.
10     MR. STEIN:
11     We have three more.
12     MS. SWANSON:
13     Wait a moment.  Estimated costs for
14 necessary structural repairs.
15     MR. STEIN:
16     We addressed that.
17     MR. DUCOTE:
18     Do you have any other information,
19 Mr. Bach?  I sent some correspondence to your
20 attorney.
21     Do you have any more information on
22 what you want to do or have you gotten any
23 competitive bids or do you have any other
24 persons to look at the scope of the work that
25 needs to be done?  Have you had any other

Page 39

1  persons to look at the scope?
2      MR. STEIN:
3      We will not respond to that question.
4  It is information for the corporation which in
5  our belief you're not entitled to at this
6  time.
7      MR. DUCOTE:
8      Okay.
9      MS. SWANSON:
10     The last agenda item, I think, is the
11 discussion of the recent increases in property
12 tax assessments of the corporation's
13 properties by the assessor of Orleans Parish.
14     MR. STEIN:
15     I thought it was for the sales of 60
16 percent interest.
17     MS. SWANSON:
18     That was Item Number 1.
19     MR. STEIN:
20     I don't think the last one is part of
21 one, four and five.  I'll look into it.
22     MS. SWANSON:
23     It is five.
24     MR. STEIN:
25     Maybe it is.  I'm sorry.  I don't

Page 40

1  have the file --
2      MR. HOFFMAN:
3      What is the issue?
4      MS. SWANSON:
5      It was on the agenda.
6      MR. DUCOTE:
7      Are we going to discuss the sale of
8  60 percent interest?
9      MR. STEIN:
10     I'm sorry, I'm looking at the wrong
11 one.  That's my fault.  I was looking at this
12 one instead of the October 1st.
13     MR. BACH:
14     Mr. Ducote said he already knows what
15 the taxes are.
16     MR. DUCOTE:
17     I know what they are going to be.
18     MR. STEIN:
19     What about discussion of the proposed
20 sale of the 60 percent majority interest?
21     MR. DUCOTE:
22     Are we going to discuss that?
23     MR. STEIN:
24     If you want to.
25     MR. DUCOTE:

Page 41

1      Do you want to sell?
2      MR. BACH:
3      An offer was made to you, Mr. Ducote,
4  and you declined it.  I asked that a written
5  offer be submitted to me for a certain amount
6  and you came and met with Mr. Stein and
7  suggested another amount, and as far as I'm
8  concerned, the offer was made and rejected.
9      MR. STEIN:
10     The tax assessment is not on the
11 agenda.
12     MR. DUCOTE:
13     I have a couple of questions.
14     What rates do you all charge?
15     MR. STEIN:
16     Mr. Ducote, you're not entitled to
17 that information.  You will be entitled to get
18 it when you are entitled to get it.
19     MR. DUCOTE:
20     And you represent Mr. Bob Bach
21 Retail, do you have a separate invoice or does
22 Decatur Realty pay it from this as well --
23     MR. STEIN:
24     You'll get that information when
25 you're entitled to it.  But you might want to

11 (Pages 38 to 41)

Page 42

```
 1   read the corporate law.
 2        I think we covered --
 3   MR. HOFFMAN:
 4        Do you have any more questions?
 5   MR. DUCOTE:
 6        Have we done anything with the
 7   insurance claims?
 8   MR. STEIN:
 9        Again, Wayne, you'll get the
10   information when you're entitled to it.
11   MR. DUCOTE:
12        Okay.
13   MS. BERNARD:
14        That meeting we had in October, but
15   the things changed -- the meeting we had
16   Mr. Bach was saying that Wayne could go to the
17   building and talk to the adjuster.
18   MR. DUCOTE:
19        Which I did.
20        I normally start off a relationship
21   like that as opposed to going to court and
22   suing people, but everybody has their choice
23   how they want to handle their business.
24   MR. STEIN:
25        Not only did Mr. Bach authorize it,
```

Page 43

```
 1   but I also sent a letter.  I don't know to who
 2   it was directed, or an e-mail directed to you
 3   or Glad which just said sure, but on the
 4   understanding that you had no authority to
 5   enter into contracts or negotiation
 6   discussions with anybody.
 7   MR. DUCOTE:
 8        I didn't do that.  I brought somebody
 9   else over there to take a look at it with me.
10   MR. STEIN:
11        Any more questions?
12   MR. DUCOTE:
13        We're done.
14   MR. BACH:
15        This meeting is now adjourned as of
16   11:40 A.M.
17        (WHEREUPON THIS CONCLUDES THE MEETING)
18
19
20
21
22
23
24
25
```

Page 44

```
 1            REPORTER'S CERTIFICATE
 2
 3        I, BEN C. FULKERSON, II, Certified Court
 4   Reporter, having been issued Certificate No.
 5   91233, and being in good standing with the
 6   C.S.R. Board, State of Louisiana, do hereby
 7   certify that the above-named witness, after
 8   having been first duly sworn by me to testify
 9   to the truth, did testify as hereinabove set
10   forth;
11        That the testimony was reported by me in
12   shorthand and transcribed under my personal
13   direction and supervision, and is a true and
14   correct transcript, to the best of my ability
15   and understanding;
16        That I am not of counsel, not related to
17   counsel or the parties hereto, and not in any
18   way interested in the outcome of this matter.
19
20
21
22
23   _____
     BEN C. FULKERSON, II
24   CERTIFIED COURT REPORTER
25
```

12  (Pages 42 to 44)

(504)831-1753    HUFFMAN & ROBINSON, INC.    (800)749-1753
433 METAIRIE ROAD, #220  CERTIFIED COURT REPORTERS    METAIRIE, LA  70005

a6b561f6-d622-4434-8f78-523015521d4e

**Lynn Swanson**

| | |
|---|---|
| **From:** | Lynn Swanson |
| **Sent:** | Monday, December 17, 2012 1:04 PM |
| **To:** | 'Stein, Mark'; Hoffman, Mitch (mhoffman@lowestein.com) |
| **Cc:** | Gladstone Jones; Kerry Murphy |
| **Subject:** | RE: Decatur Realty |

Mark and Mitch:

Mark, good to see you, and Mitch, nice to meet you this morning.

After Decatur Realty Corporation's shareholders' meeting this morning, I had a chance to discuss further the parking lot lease with Mr. Ducote. You all were clear during this morning's meeting that your client has no obligation to provide Mr. Ducote with any information with regard to that lease. Of course we do not agree with that position, and from a financial standpoint, it appears that generating as much income as possible from the parking lot is in the best interests of the corporation, particularly if the lease being contemplated is a long term lease. The $4,000/mo. rent over a ten year term discussed by Mr. Ducote at today's shareholders' meeting was an offer he made, contemplating only the current lease as he understands it: $2,000/mo. paid Mr. Bach's company, 519 Conti Street, Ltd., expiring at the end of this year. We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree to this request, which is clearly in the best interests of the corporation.

Finally, could you please provide me with the name of the court reporter that transcribed this mornings' shareholders' meeting?

**Lynn E. Swanson**
*Attorney at Law*



601 Poydras Street, Suite 2655 . New Orleans, Louisiana  70130 . Telephone: 504.523.2500 . Facsimile: 504.523.2508 .
LSwanson@jonesswanson.com . jonesswanson.com

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Hoffman, Mitch [mailto:mhoffman@lowestein.com]
**Sent:** Friday, December 14, 2012 3:09 PM
**To:** Lynn Swanson
**Cc:** Oufnac, Katherine; Stein, Mark; smbach@bellsouth.net
**Subject:** Decatur Realty

Lynn

1

**EXHIBIT**
*1  2*

We talked with Mr Bach and, at your request, we will add a discussion of the building lease to the agenda for Monday's meeting.

We will see you then.

Mitch

**MITCHELL J. HOFFMAN**
ATTORNEY

# LOWE STEIN

HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Direct Telephone: 504-589-0219
Facsimile: 504-581-2461
Direct Facsimile: 504-589-0250
Email: mhoffman@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**Lynn Swanson**

| | |
|---|---|
| **From:** | Lynn Swanson |
| **Sent:** | Wednesday, December 19, 2012 4:28 PM |
| **To:** | 'Stein, Mark'; Hoffman, Mitch (mhoffman@lowestein.com) |
| **Cc:** | Gladstone Jones; Kerry Murphy |
| **Subject:** | KD v. Decatur |

Dear Mark:

As you know, earlier this week, I asked that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote could counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering; a request in the best interests of Decatur Corporation and its shareholders. You responded that Mr. Bach denied that request. Earlier today I asked you to advise whether a lease of the parking lot and a lease of the building (the two properties owned by Decatur) have been negotiated and further, whether a lease of either has been entered into. You have not responded to me. Because I haven't heard from you in response to those questions, I presume that Mr. Bach has not negotiated or entered into a lease. In order to protect KD's interest as a shareholder in Decatur, this afternoon we are going to file an Amended Petition and Motion for TRO and Preliminary Injunction, seeking to enjoin Decatur and Mr. Bach from (a) entering into any lease of the Parking Property or the Building without first providing Plaintiff with information regarding the terms of any proposed lease(s); and (b) entering into any lease of the Parking Property that does not maximize the value to Decatur and its shareholders. You will receive service of these pleadings once they have been filed. As before, we will not have this walked through for signature, but have made arrangements with Duty Judge Giarrusso to be heard on Friday morning at 10:00 (after her regular rules). Please let me know if you have any questions.

**Lynn E. Swanson**
*Attorney at Law*



JONES
SWANSON
HUDDELL &
GARRISON LLC

601 Poydras Street, Suite 2655 . New Orleans, Louisiana  70130 . Telephone: 504.523.2500 . Facsimile: 504.523.2508 .
LSwanson@jonesswanson.com . jonesswanson.com

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice:  To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

1



EXHIBIT
13

**Lynn Swanson**

| | |
|---|---|
| **From:** | Stein, Mark <mstein@lowestein.com> |
| **Sent:** | Tuesday, December 18, 2012 1:51 PM |
| **To:** | Lynn Swanson |
| **Cc:** | Hoffman, Mitch |
| **Subject:** | RE: DRC |

Wayne's request is denied. By the way, I once again reiterate that if you have any authority that your client is entitled to books and records of the corporation at this point, notwithstanding the provisions of La. R.S. 12:103D(1)(a), please let me know.

For the record, Wayne offered $4,000 a month with no conditions prior to yesterday and on more than one previous occasion. He never told Decatur how he came up with that amount or what it was based on. Also neither Wayne nor you ever attempted to explain why the current lease is relevant to Wayne's offer, nor was it requested when Wayne first made the $4000 offer.

I am trying to find the name of the court reporter – I lost his card, but will get it to you as soon as I can find it.

**MARK S. STEIN**
ATTORNEY
**LOWE STEIN**
HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Facsimile: 504-581-2461
Direct Facsimile: 504-589-0233
Email: mstein@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclosure: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**From:** Lynn Swanson [mailto:LSwanson@jonesswanson.com]
**Sent:** Tuesday, December 18, 2012 1:42 PM
**To:** Stein, Mark
**Cc:** Hoffman, Mitch
**Subject:** Re: DRC

Mark:

Have you had a chance today to speak to Mr. Bach?
Also, please provide me with the name of yesterday's court reporter. Thank you.

1



EXHIBIT
14

Lynn E. Swanson
Jones, Swanson, Huddell & Garrison, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana  70130
Telephone: 504.523.2500
Facsimile:  504.523.2508

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice:  To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Stein, Mark [mailto:mstein@lowestein.com]
**Sent:** Monday, December 17, 2012 05:37 PM
**To:** Lynn Swanson
**Cc:** Hoffman, Mitch <mhoffman@lowestein.com>
**Subject:** DRC

Lynn

Sidney was on a plane this afternoon.  I will talk to him tomorrow as soon as I can and get back to you.

**MARK S. STEIN**
ATTORNEY
## LOWE STEIN
HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Facsimile: 504-581-2461
Direct Facsimile: 504-589-0233
Email:  mstein@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.  If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**Lynn Swanson**

| | |
|---|---|
| **From:** | Lynn Swanson |
| **Sent:** | Wednesday, December 19, 2012 12:15 PM |
| **To:** | 'Stein, Mark' |
| **Cc:** | Hoffman, Mitch; Gladstone Jones; Kerry Murphy |
| **Subject:** | RE: Decatur Realty |

Mark:

I do not need the signed original.
Would you please advise whether a lease of the parking lot and a lease of the building have been negotiated and further, whether a lease of either has been entered into? Thank you.

**Lynn E. Swanson**
*Attorney at Law*

 JONES
SWANSON
HUDDELL &
GARRISON ʟʟᴄ

601 Poydras Street, Suite 2655 . New Orleans, Louisiana  70130 . Telephone: 504.523.2500 . Facsimile: 504.523.2508 .
LSwanson@jonesswanson.com . jonesswanson.com

CONFIDENTIALITY NOTICE: This e-mail transmission and/or the documents accompanying it may contain confidential information belonging to the sender which 's protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (504) 523-2500 or by return e-mail to arrange for return of the information or destruction of the same.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, please be informed that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Stein, Mark [mailto:mstein@lowestein.com]
**Sent:** Wednesday, December 19, 2012 9:24 AM
**To:** Lynn Swanson
**Cc:** Hoffman, Mitch
**Subject:** Decatur Ralty

Lynn

Please let me know if you want the signed original.  If you do I will have it delivered to you as soon as I receive it from Sidney.

**MARK S. STEIN**
ATTORNEY
**LOWE STEIN**
HOFFMAN ALLWEISS & HAUVER, LLP
'01 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: 504-581-2450
Facsimile: 504-581-2461

1

**EXHIBIT**
15

Direct Facsimile: 504-589-0233
Email: mstein@lowestein.com
www.lowestein.com

The information contained in this electronic message may contain attorney-client privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.   If you are not the intended recipient of this e-mail message you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender by return e-mail; and by telephone at 504-581-2450.

IRS Circular 230 Disclaimer: Pursuant to Treasury guidelines, any tax advice contained in this communication (or any attachment) does not constitute a formal opinion. Accordingly, any tax advice contained in this communication (or any attachment) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be asserted by the Internal Revenue Service.

**Lynn Swanson**

| | |
|---|---|
| **From:** | Stein, Mark <mstein@lowestein.com> |
| **Sent:** | Wednesday, December 19, 2012 9:55 PM |
| **To:** | Lynn Swanson |
| **Cc:** | Hoffman, Mitch |
| **Subject:** | Drc |

Lynn

I just received your voicemail. Sorry. I may not be available tomorrow afternoon. I will try to call you. I only had a chance to review your latest pleading briefly. However DCR has signed leases for both the parking lot and the building. Do you still want to go to court Friday or is your request for a tro moot ?

Sent from my iPad

1



CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.:                                                    DIVISION:

KD GRETNA PROPERTIES, L.L.C.

versus

DECATUR REALTY CORP. AND SIDNEY BACH

FILED:_____          _____
                                          DEPUTY CLERK

**PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION,
AND REQUESTS FOR ADMISSION TO DEFENDANTS
SIDNEY BACH AND DECATUR REALTY CORP.**

To:   Decatur Realty Corp.
      Through its agent for service of process:
      Crescent City Corporate Services, L.L.C.
      701 Poydras St., Ste. 3600
      New Orleans, LA 70139-7735

      Sidney Bach
      President
      Decatur Realty Corporation
      425 Kimberly Ave.
      Asheville, NC 28804

Plaintiff, KD Gretna Properties, L.L.C. ("KD Gretna") hereby propounds the following

Interrogatories pursuant to Louisiana Code of Civil Procedure Article 1457, Requests for

Production of Documents pursuant to Louisiana Code of Civil Procedure Articles 1461 and

1462, and Requests for Admission pursuant to Louisiana Code of Civil Procedure article 1466 on

defendants Sidney Bach ("Mr. Bach") and Decatur Realty Corp. ("Decatur") to be responded to

with responses, objections, and responsive documents according to the time delays provided in

the Louisiana Code of Civil Procedure. KD Gretna requests service of the answers on its counsel

at the office of Jones, Swanson, Huddell & Garrison, L.L.C., 601 Poydras Street, Suite 2655,

New Orleans, Louisiana 70130.

1

## INSTRUCTIONS

Pursuant to Louisiana Civil Code Article 1428, these requests are deemed to be ongoing and you are obligated to supplement your responses as information becomes available. Please provide all responses in full compliance with the standards set forth in the Louisiana Code of Civil Procedure and otherwise under Louisiana law, specifically but not limited to the following respects:

1. For all documents produced in response to these discovery requests, provide an index that identifies to what interrogatories and requests for production each document is purported to be responsive.

2. As to any portion of these discovery requests that you believe to be objectionable, please include in your response as to that discovery request: (a) an identification of the portion of the request you believe to be objectionable, and (b) the specific basis of that objection stated in such manner as to enable the Plaintiffs and the Court to ascertain the validity of the objection. In including the basis for any such objection, do not use general qualifiers such as "to the extent," but specifically identify and describe the extent to which you believe the request to be objectionable. If any portion of such a request is not included within that identified extent as to which you have objection, fully answer and/or provide the requested documents responsive to the unobjected-to portion.

3. All electronically-stored information or ESI is to be produced in .tiff image format, with all metadata and full text extracted to a linked electronic file. If you do not have such ESI in the format described above, but do currently have it in a different image format (e.g., PDF) with the extracted metadata and full text in a linked electronic file, then production in that format is acceptable. In addition, we request that the following ESI be produced in Native File Format in addition to its production in any image format: spreadsheets and other such file types that when converted to image format take on an appearance noticeably different from the one the running Native File took when viewed on a computer screen, such as an Excel spreadsheet with its columns and cells running over

2

multiple .tiff images. All electronically-stored information so produced shall be produced on a generally-accepted electronic medium, such as DVD, CD, Zip Disk, or the like.

## DEFINITIONS

1. "Decatur" shall mean Decatur Realty Corp. and its affiliates, predecessors, agents, present and former employees, officers, directors, representatives, attorneys, successors, assigns, and/or any other individuals or entities retained by or acting on behalf of Decatur.

2. "Mr. Bach" shall mean Sidney Bach and his agents, representatives, attorneys, successors, predecessors, assigns, and/or any other individuals or entities retained by or acting on behalf of Mr. Bach.

3. "You" shall mean Decatur and/or Mr. Bach, as defined in items 1 and 2 above.

4. "Parking Property" shall mean the certain parking property owned by Decatur and located at 519 Conti Street, New Orleans, Louisiana.

5. "Building" shall mean the certain building owned by Decatur located at 413-15 Decatur Street, New Orleans, Louisiana.

6. "Parking Property Lease" shall mean that certain lease for the Parking Property with Decatur as lessor with an effective date of January 1, 2013.

7. "Building Lease" shall mean that certain lease for the Building with Decatur as lessor with an effective date of January 1, 2013.

8. "Communicate" or "communication" shall mean all means by which information is conveyed by one person or entity to another, including but not limited to any written, oral, telephonic or other inquiry, examination, notice, representation, discussion, conversation, correspondence, email, text message, facsimile, memorandum, telegram, pleading, negotiation, review, claim, agreement, understanding, meeting or interview. Communications between any individual or entity and any other individual or entity includes communications going in either direction between such individuals or entities.

9. The terms "document" and "documents" shall have the broadest meaning permitted under the Code of Civil Procedure and Louisiana law and includes, without limitation, all

3

originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise) and drafts of the following items, whether printed or recorded (through a sound, video or other electronic, magnetic or digital recording system) or reproduced by hand, including but not limited to letters, correspondence, memoranda, records, spreadsheets, summaries of personal conversations or interviews, minutes or records or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, logs, calendars, appointment books, charts, graphs, data sheets, pictures, photographs, illustrations, blueprints, drawings, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("email"), electronically-stored information or ESI, interoffice communications, advertising materials and any other writings, papers and tangible things of whatever description whatsoever, including but not limited to any information contained in any computer, even if not yet printed out, within your possession, custody or control.

10.     "Electronically-stored information" or "ESI" shall include any information created, stored, or best utilized with computer technology of any type, including but not limited to data; word-processing documents; spreadsheets; presentation documents; graphics; animations; images; email, instant messages, and text messages (including attachments); audio, video, and audiovisual recordings; voicemails stored on databases; networks; computers and computer systems; servers; archives; back-up or disaster recovery systems; discs, CDs, diskettes, drives, tapes, cartridges, and other storage media; printers; the Internet; personal digital assistants; handheld wireless devices; cellular telephones; pagers; fax machines; and voicemail systems. Any electronically-stored information that differs from the original shall not be deemed identical to the original and shall be

4

produced separately (e.g., otherwise identical emails but for different recipients; otherwise identical files but for differing modified, accessed, and created times; otherwise identical files but for storage on different computers or by different individuals).

11.   The terms "identify," "identification," "name," or "describe," when used in reference to a natural person, shall mean to state his or her: (a) full name; (b) all positions of employment with or management of Decatur; (c) current or last known address and telephone number(s); (d) current or last known position and business affiliation; and (e) positions and business affiliations, if other than (b) herein, during all times relevant to the period of this lawsuit.

12.   The terms "identify," "identification," "name," or "describe," when used in reference to any file or document, shall mean to state the identifying nomenclature thereon and the type of file or document, including, without limitation, its title, the date appearing thereon, if any, the person, persons, or office to whom sent, the person or office from whom sent, its present location or custodian, the form of the document, and a description of its contents. Any such document should be so identified, whether or not such document is in the possession of the Defendant's attorney, and whether or not the document is claimed to be privileged. If any such file or document was, but no longer is, in your possession, please state what disposition was made of it. In lieu of identifying a document or file as required by an interrogatory, it shall be deemed an acceptable response to the interrogatory to attach a legible copy of the document or of the file and its contents and to specifically describe such attachment in the response. By responding in this fashion, you agree to waive all objection to the authenticity of the copy of the file and its contents or of documents so produced.

13.   When used with respect to a corporation, partnership, or other business organization or entity, the words "name," "identify," or "describe" shall mean to state its name, its full business address (all business addresses), its date and place of incorporation, if

5

applicable, its principal place of business, if known, the nature of the organization (e.g., corporation, joint - venture, etc.), and its chief executive officer.

14.  With respect to oral statements or communications, "identify" or "describe" shall mean to state the maker, recipient, the date, when and where made, the persons present when the communication was made, the mode of communication, and the subject matter of the communication.

15.  When used with respect to a communication, meeting, conference, conversation, or discussion, the words "identify" or "describe" shall mean to state its place, date, the individuals present, including their business affiliations and positions, the subject matter discussed, and whether any documents describing, reflecting, or referring to such a meeting exist and the identifying data relating to such documents.

16.  "Person" means any natural person, corporation, d/b/a, a/k/a, proprietorship, partnership, professional corporation, joint venture, association, group, governmental agency or agent, whether foreign or domestic, and any other entity.

17.  The terms "regarding" or "related to" mean regarding, relating to, relevant to, concerning, evidencing, referring to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

18.  All terms defined herein, and those not specifically defined, shall be given their usual and customary meaning.

19.  With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such document (and, where applicable, each attachment thereto):

a.  the name of the sender, if any, of the documents;

b.  the name of the author of the document;

c.  the name of the person, if any, to whom the document and copies were sent;

d.  the date of the document;

e.  the date on which the document was received by those having possession of the document;

6

f.      a description of the nature and the subject matter of the document;

g.      the statute, rule or decision that is claimed to give rise to the privilege;

h.      the last-known custodian of the document and the present location of the document;

i.      attachments to the document;

j.      the number of pages comprising the document;

k.      whether the document is handwritten, typewritten or otherwise prepared; and

l.      any other information that is useful in identifying or is necessary to identify the document.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that you received an email from counsel for KD Gretna, sent at 1:04 p.m. on December 17, 2012, which stated:

> We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree to this request, which is clearly in the best interests of the corporation.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Parking Property Lease is for a rental amount less than $7,500 per month.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail the terms of the Parking Property Lease, including but not limited to the amount of rent, the name of the lessee, and the term.

**INTERROGATORY NO. 2:**

Describe in detail the terms of the Building Lease, including but not limited to the amount of rent, the name of the lessee, and the term.

**INTERROGATORY NO. 3:**

    Identify all directors of Decatur from October 22, 2012 through the date of these Requests.

**INTERROGATORY NO. 4:**

    Identify all officers of Decatur from October 22, 2012 through the date of these Requests.

**INTERROGATORY NO. 5:**

    Describe any and all steps which you took to determine the fair market rental value for the Building, including but not limited to any valuations obtained for and the names of any individuals or entities with whom you communicated regarding the value of the Building.

**INTERROGATORY NO. 6:**

    Describe any and all steps which you took to determine the fair market rental value for the Parking Property, including but not limited to any valuations obtained and the names of any individuals or entities with whom you communicated regarding the value of the Parking Property.

**INTERROGATORY NO. 7:**

    Describe any and all steps taken by Decatur and/or Mr. Bach to find tenants for and negotiate leases of the Building.

**INTERROGATORY NO. 8:**

    Describe any and all steps taken by Decatur and/or Mr. Bach to find tenants for and negotiate leases of the Parking Property.

**INTERROGATORY NO. 9:**

    Describe any and all efforts by Decatur and/or Mr. Bach to obtain expert opinions regarding and/or analyses of the Parking Property, the Parking Property Lease, the Building, and/or the Building Lease.

**INTERROGATORY NO. 10:**

    Describe any and all services performed in exchange for Decatur's management fee from October 22, 2012 through the date of these Requests.

**INTERROGATORY NO. 11:**

Describe any and all reasons that Decatur's management fee was increased from $500 to $1000 per month, exclusive of reimbursements for necessary expenses incurred on behalf of the corporation.

**INTERROGATORY NO. 12:**

Describe any and all steps taken by Decatur's officers and directors to determine what a reasonable management fee would be for a corporation of Decatur's size, type, and average revenue.

**INTERROGATORY NO. 13:**

Describe Decatur's document retention and/or document destruction policies, practices, and procedures.

**INTERROGATORY NO. 14:**

State the date and time on which you executed the Building Lease and the date and time on which you sent or delivered the executed Building Lease to the tenant.

**INTERROGATORY NO. 15:**

State the date and time on which the tenant executed the Building Lease and the date and time on which the tenant sent or returned the executed Building Lease to you.

**INTERROGATORY NO. 16:**

State the date and time on which you executed the Parking Property Lease and the date and time on which you sent or delivered the executed Parking Property Lease to the tenant.

**INTERROGATORY NO. 17:**

State the date and time on which the tenant executed the Parking Property Lease and the date and time on which the tenant sent or returned the executed Parking Property Lease to you.

**INTERROGATORY NO. 18:**

If you deny any of the Requests for Admission herein, identify any and all facts that relate or pertain in any way to such denial(s).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 1 in these Requests.

**REQUEST FOR PRODUCTION NO. 2:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 2 in these Requests.

**REQUEST FOR PRODUCTION NO. 3:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 5 in these Requests.

**REQUEST FOR PRODUCTION NO. 4:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 6 in these Requests.

**REQUEST FOR PRODUCTION NO. 5:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 7 in these Requests.

**REQUEST FOR PRODUCTION NO. 6:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 8 in these Requests.

**REQUEST FOR PRODUCTION NO. 7:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 9 in these Requests.

**REQUEST FOR PRODUCTION NO. 8:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 10 in these Requests.

**REQUEST FOR PRODUCTION NO. 9:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 11 in these Requests.

**REQUEST FOR PRODUCTION NO. 10:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 12 in these Requests.

**REQUEST FOR PRODUCTION NO. 11:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 13 in these Requests.

**REQUEST FOR PRODUCTION NO. 12:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 14 in these Requests.

**REQUEST FOR PRODUCTION NO. 13:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 15 in these Requests.

**REQUEST FOR PRODUCTION NO. 14:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 16 in these Requests.

**REQUEST FOR PRODUCTION NO. 15:**

Produce any and all documents that relate or pertain in any way to the subject matter of your response to Interrogatory No. 17 in these Requests.

**REQUEST FOR PRODUCTION NO. 16:**

Produce any and all documents that refer, relate, or pertain in any way to valuations obtained by Decatur for the Parking Property, including but not limited to copies of any valuations obtained and any documents reflecting communications relating thereto or with any individuals or entities regarding the value of the Parking Property.

**REQUEST FOR PRODUCTION NO. 17:**

Produce any and all documents that refer, relate, or pertain in any way to valuations obtained by Decatur for the Building, but not limited to copies of any valuations obtained and any documents reflecting communications relating thereto or with any individuals or entities regarding the value of the Building.

11

**REQUEST FOR PRODUCTION NO. 18:**

Produce any and all documents regarding the Parking Property Lease, including but not limited to a copy of the Parking Property Lease and all documents that reflect communications related thereto, including but not limited to emails and written correspondence.

**REQUEST FOR PRODUCTION NO. 19:**

Produce any and all documents regarding the Building Lease, including but not limited to a copy of the Building Lease and all documents that reflect communications related thereto, including but not limited to emails and written correspondence.

**REQUEST FOR PRODUCTION NO. 20:**

Produce any and all documents that refer, relate or pertain in any way to expert opinions and/or analysis obtained by Decatur for the Parking Property and/or the Parking Property Lease.

**REQUEST FOR PRODUCTION NO. 21:**

Produce any and all documents that refer, relate or pertain in any way to expert opinions and/or analysis obtained by Decatur for the Building and/or the Building Lease.

**REQUEST FOR PRODUCTION NO. 22:**

Produce any and all documents related to meetings of the Board of Directors of Decatur from October 22, 2012 through the date of these Requests, including but not limited to minutes from meetings, agendas for any meetings and transcripts of meetings.

**REQUEST FOR PRODUCTION NO. 23:**

Produce any and all documents related to meetings of the officers of Decatur from October 22, 2012 through the date of these Requests, including but not limited to minutes from meetings, agendas for any meetings, and transcripts of meetings.

**REQUEST FOR PRODUCTION NO. 24:**

Produce any and all documents, including but not limited to any and all correspondence and/or agreements, related to any other transactions between Decatur and/or Mr. Bach and the tenants of the Parking Property or the Building.

**REQUEST FOR PRODUCTION NO. 25:**

Produce any and all documents not already produced in response to the above Requests for Production which relate or pertain in any way to the above Interrogatories and/or which you reviewed in responding to the above Interrogatories.

**REQUEST FOR PRODUCTION NO. 26:**

Produce any and all documents which you may use in defense of the claims herein.

**REQUEST FOR PRODUCTION NO. 27:**

Produce any and all documents regarding Decatur's document retention and/or document destruction policies, practices, and procedures.

**REQUEST FOR PRODUCTION NO. 28:**

If you deny any of the Requests for Admission herein, produce any and all documents that relate or pertain in any way to such denial(s).

Respectfully submitted,

_____
GLADSTONE N. JONES (#22221), T.A.
**LYNN SWANSON (#22650)**
**CATHERINE E. LASKY (#28652)**
**KERRY MURPHY (#31382)**
**JONES, SWANSON, HUDDELL &**
**GARRISON, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Telecopier: (504) 523-2508
**ATTORNEYS FOR PLAINTIFF**

**SHERIFF PLEASE SERVE:**
Decatur Realty Corporation
Through its agent for service of process:
Crescent City Corporate Services, L.L.C.
701 Poydras St., Ste. 3600
New Orleans, LA 70139-7735


**WILL SERVE VIA LONG ARM STATUTE:**
Sidney Bach
President
Decatur Realty Corporation
425 Kimberly Ave.
Asheville, NC 28804

13

## CERTIFICATE OF SERVICE

I hereby certify that I have requested sheriff service of the foregoing upon Decatur Realty Corporation via its agent for service of process, this 3rd day of January, 2013, concurrently with the Original Verified Petition for Declaratory Judgment, Breach of Fiduciary Duty, and Damages.

I further hereby certify that I will serve the foregoing upon Sidney Bach in accordance with the Louisiana Long Arm Statute, La. R.S. § 13:3201, et seq., by depositing a certified copy of the foregoing, in the United States mail, postage prepaid, via certified mail addressed to Sidney Bach at his home address, 425 Kimberly Ave., Asheville, NC 28804, this 3rd day of January, 2013, concurrently with the Original Verified Petition for Declaratory Judgment, Breach of Fiduciary Duty, and Damages.

Finally, I hereby certify that I will serve the foregoing upon the following known counsel for Decatur Realty Corporation and Sidney Bach by electronic mail and U.S. Mail, this 3rd day of January, 2013, concurrently with the Original Verified Petition for Declaratory Judgment, Breach of Fiduciary Duty, and Damages.

> Mr. Mark Stein
> Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.
> One Shell Square
> 701 Poydras Street, Suite 3600
> New Orleans, Louisiana 70139-3600

14



## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO.: 13-53                                           DIVISION: I -14

### KD GRETNA PROPERTIES, L.L.C.

#### versus

### DECATUR REALTY CORP. AND SIDNEY BACH

FILED:_____        _____
                                          **DEPUTY CLERK**

### CONSENT MOTION AND INCORPORATED MEMORANDUM TO TRANSFER CASE TO DIVISION H, SECTION 12 AND CONSOLIDATE WITH CASE NO. 2012-11563 PURSUANT TO LOCAL RULE 9.3

NOW INTO COURT, through undersigned counsel, comes Plaintiff, KD Gretna Properties, L.L.C. ("Plaintiff" or "KD Gretna"), who respectfully moves this Court, pursuant to Local Rule 9.3, to transfer the above-captioned case from Division I, Section 14 of this Court to Division H, Section 12, and consolidate the above-captioned case with the related, earlier-filed Case No. 2012-11563, which is currently pending before Division H, Section 12. In support of this motion, Plaintiff respectfully submits as follows:

1.  On December 12, 2012, KD Gretna, in its capacity as a shareholder of Decatur Realty Corporation ("Decatur"), filed an action in this Court styled *KD Gretna Properties, L.L.C. v. Decatur Realty Corporation and Sidney Bach,* Case No. 2012-11563, which was assigned to Judge Michael G. Bagneris, Division H, Section 12 of this Court (the "Original Decatur Litigation"). In the Original Decatur Litigation, Plaintiff sought injunctive relief to prevent Decatur and Sidney Bach ("Mr. Bach," and collectively with Decatur, the "Defendants") from entering into and operating certain leases on the two real estate assets owned by Decatur, located at 413-15 Decatur Street, New Orleans, Louisiana and 519 Conti Street, New Orleans, Louisiana (the "Decatur Properties") because such actions would constitute a breach of the fiduciary duties

1

owed by Mr. Bach (an officer and the sole Director of Decatur) to the corporation and its shareholders. On December 28, 2012, a hearing was held before Judge Bagneris on Plaintiff's motion for a preliminary injunction and Defendants' peremptory exceptions of no right of action and no cause of action. Judge Bagneris ruled from the bench, holding that Plaintiff was not entitled to an injunction due to a lack of irreparable harm and granting the exceptions. To date, no final judgment has been entered in the Original Decatur Litigation.

2.   On January 3, 2013, KD Gretna, in its capacity as a shareholder of and on behalf of Decatur, filed the above-captioned action in this Court (the "Declaratory Judgment Action"). *See* **Exhibit A** hereto. In the Declaratory Judgment Action, KD Gretna seeks (a) a declaratory judgment in favor of Decatur and against Mr. Bach finding that the leases on the Decatur Properties are invalid and unenforceable because they were executed in violation of Sidney Bach's fiduciary duties to Decatur and its shareholders; and (b) a monetary judgment for actual damages in favor of Decatur and against Mr. Bach in an amount to be proven at trial, plus attorneys' fees, interest and costs. Although KD Gretna noted on its Clerk of Civil District Court Cover Sheet that the Declaratory Judgment Action was a case related to the Original Decatur Litigation, the Declaratory Judgment Action was assigned through the Court's random allotment system to Chief Judge Piper G. Griffin, Division I, Section 14 of this Court.

3.   Local Rule 9.3 provides for the transfer of related cases to the division in which the original case was allotted. The rule states, in pertinent part: "To achieve continuity of case management, and to avoid the appearance of forum-shopping, it is the policy of the court that subsequent but related cases should be transferred to the division in which the original case was allotted, whether or not such earlier case is still pending. It shall be the duty of any attorney in such cases to call the Court's attention to the existence of such earlier case." L.R. 9.3, Allotment of Cases, ¶ 4. Rule 9.3 also

2

provides for the consolidation of related cases, providing, in pertinent part: "It is the policy of the court to transfer to the lower-numbered suit and consolidate for trial those cases in which such consolidation is appropriate..." L.R. 9.3, Transfer and Consolidation, ¶ 1. Rule 9.3 further provides that "[t]he transfer and consolidation shall be by order of the judge to whom the case is being transferred, after contradictory hearing with all parties in each case, or with their written approval." *Id.*

4. On January 8, 2013, counsel for defendants Decatur and Mr. Bach notified undersigned counsel that they have no objection to the transfer of Case No. 13-53 to Division H, Section 12 and the consolidation of Case No. 13-53 with Case No. 12-11563. *See* **Exhibit B** hereto.

5. Two "examples of cases which ought to be transferred to the original division" are "[s]ubsequent cases between the same or related parties arising from the same incident or transaction..." and "[c]ases growing out of earlier cases." L.R. 9.3, Allotment of Cases, ¶ 4(1) and (4). One example of cases which "ought to be consolidated" are "multiple cases principally involving the same or similar legal issues..." L.R. 9.3, Transfer and Consolidation, ¶ 1 and (1)(6).

6. The Declaratory Judgment Action is related to the Original Decatur Litigation such that transfer and consolidation is appropriate. *See* L.R. 9.3. The parties to the two cases are exactly the same. The two cases arise from "the same incident or transaction" – the leases entered into by the Defendants on the Decatur Properties. Indeed, the facts of this case are identical to those alleged in the Original Decatur Litigation. This case "grew out of" the Original Decatur Litigation, becoming necessary after this Court denied Plaintiff's request for an injunction and granted Defendants' exceptions. Finally, while the relief sought in the two cases is different (injunctive relief versus declaratory judgment and damages), the legal issues raised in the two cases are the same – whether certain actions of Mr. Bach relating to the leases

on the Decatur Properties constitute a breach of his fiduciary duties to Decatur and its shareholders under La. Rev. Stat. § 12:91.

7.  Transfer of the Declaratory Judgment Action to Division H, Section 12 and consolidation of the Declaratory Judgment Action with the Original Decatur Litigation is appropriate notwithstanding this Court's ruling at the December 28, 2012 hearing and will be appropriate even after the Original Decatur Litigation is dismissed. *See* L.R. 9.3, Allotment of Cases, ¶ 4 ("… it is the policy of the court that subsequent but related cases should be transferred to the division to which the original case was allotted, whether or not such earlier case is still pending"); L.R. 9.3, Transfer and Consolidation, ¶ 3 ("If the lower numbered case has been dismissed with or without prejudice or the judge has rendered a judgment before the subsequent case is filed, nevertheless, cases otherwise subject to consolidation shall be transferred and/or consolidated.").

WHEREFORE, Plaintiff respectfully requests that this Court transfer the above-captioned case to Division H, Section 12 of this Court and consolidate it with Case No. 2012-11563.

Respectfully submitted,

_____
GLADSTONE N. JONES (#22221), T.A.
LYNN SWANSON (#22650)
CATHERINE E. LASKY (#28652)
KERRY A. MURPHY (#31382)
JONES, SWANSON, HUDDELL &
    GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Telecopier: (504) 523-2508

**ATTORNEYS FOR PLAINTIFF**

4

## CERTIFICATE OF SERVICE

I hereby certify that I will deliver a copy of the foregoing to Decatur Realty Corporation via its agent for service of process, this 8th day of January, 2013.

I further hereby certify that I will send a copy of the foregoing to Sidney Bach via United States mail, postage prepaid, certified mail at his home address, 425 Kimberly Ave., Asheville, NC 28804, this 8th day of January, 2013.

Finally, I hereby certify that I will serve a copy of the foregoing upon the following known counsel for Decatur Realty Corporation and Sidney Bach by electronic mail and United States Mail, this 8th day of January, 2013.

Mr. Mark Stein
Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P.
One Shell Square
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-3600

5

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.: 13-53                                         DIVISION: I-14

KD GRETNA PROPERTIES, L.L.C.

versus

DECATUR REALTY CORP. AND SIDNEY BACH

FILED:_____          _____
                                                    DEPUTY CLERK

### ORDER

**CONSIDERING THE FOREGOING** Consent Motion and Incorporated Memorandum to Transfer Case to Division H, Section 12 and Consolidate with Case No. 2012-11563 Pursuant to Local Rule 9.3 (the "Motion"), and for the reasons stated therein,

IT IS ORDERED THAT the Motion be and hereby is GRANTED.

IT IS FURTHER ORDERED THAT the above-captioned case be and hereby is TRANSFERRED to Section 12, Division H of this Court and CONSOLIDATED with Case No. 2012-11563.

New Orleans, Louisiana, this _____ day of January, 2013.

                        MICHAEL G. BAGNERIS
                              JUDGE
                          DIVISION "H"
                    _____
                        DISTRICT JUDGE

A TRUE COPY

_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.: *13 - 5 3*                                    DIVISION: *I -14*

KD GRETNA PROPERTIES, L.L.C.

versus

DECATUR REALTY CORP. AND SIDNEY BACH

FILED:_____

_____
DEPUTY CLERK

## ORIGINAL VERIFIED PETITION FOR DECLARATORY JUDGMENT, BREACH OF FIDUCIARY DUTY, AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, KD GRETNA PROPERTIES, L.L.C., in its capacity as shareholder of and on behalf of Decatur Realty Corp., who respectfully files this Original Verified Petition for Declaratory Judgment, Breach of Fiduciary Duty, and Damages against nominal defendant DECATUR REALTY CORPORATION ("Decatur") and defendant SIDNEY BACH ("Mr. Bach" and, together with Decatur, "Defendants") upon representing as follows:

I.

### PARTIES

1.      Plaintiff KD GRETNA PROPERTIES, L.L.C. ("Plaintiff" or "KD Gretna") is a shareholder in Decatur. KD Gretna is a limited liability company organized under the laws of the State of Louisiana with a single member, Wayne Ducote ("Mr. Ducote"), who is domiciled in the state of Florida. KD Gretna has been a shareholder in Decatur at all times relevant hereto.

2.      Nominal Defendant DECATUR REALTY CORPORATION ("Decatur") is a corporation organized under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana, in good standing in and authorized to do business in the State of Louisiana.

3.      Defendant SIDNEY BACH ("Mr. Bach") is a natural person of the full age of majority, who, upon information and belief, is a citizen of the State of North Carolina and a

1



resident of the city of Asheville, North Carolina. Mr. Bach has been the President and a Director of Decatur at all times relevant hereto.

## II.

### JURISDICTION AND VENUE

4.      Venue is proper in this Court under Article 74 of the Louisiana Code of Civil Procedure because defendant Mr. Bach has breached his fiduciary duties as an Officer and Director of Decatur in this Parish.

5.      Decatur was at all relevant times operating in this Parish with its principal place of business located in this Parish.

## III.

### FACTS

#### General Information Regarding Decatur and Its Properties

6.      There are only two shareholders in Decatur. Plaintiff is a 40.56 percent shareholder in Decatur and likewise was a 40.56 percent shareholder at the time of the occurrences and transactions complained of herein. Plaintiff's shares were purchased on October 22, 2012 from the Succession of Dorothy Shaumburger (the "Succession"). Mr. Bach owns the remaining 59.44 percent of shares in Decatur.

7.      Decatur has a sole Director: Mr. Bach. Decatur previously had two directors: Mr. Bach and his wife, Patricia Bach ("Mrs. Bach"). Mr. Bach served as Director as well as President, and Mrs. Bach served as Director and Vice-President/Secretary. Upon information and belief, Mrs. Bach resigned from her position as Director in December 2012, but was recently elected (and remains) Secretary and Treasurer of Decatur.

8.      Decatur owns two real estate assets: a building located at 413-15 Decatur Street, New Orleans, Louisiana (the "Building") and a parking property located at 519 Conti Street, New Orleans, Louisiana (the "Parking Property") (collectively, the "Decatur Properties"). Decatur's only business is leasing out the Decatur Properties.

9.      Mr. Ducote has been actively and successfully involved in the parking business for 45 years and is extremely knowledgeable about that business. He owns or controls 1,700

2

parking spots in the greater New Orleans area and is also engaged in the parking business in southern Florida, where he employs 1,200 employees. Mr. Ducote is also actively involved in the commercial real estate business and has significant knowledge about that business.

**Background and Procedural History**
**of Related Action for Injunctive Relief**

10.    Between October 2012 and the present, Plaintiff has made numerous oral and written requests to review Decatur's books and records. Plaintiff has specifically requested copies of the existing books and accounting records of Decatur, its current and proposed leases on the Building and the Parking Property, and insurance policies for both the Building and the Parking Property. Decatur and Mr. Bach, through their counsel, have denied all of Plaintiff's requests.

11.    On October 1, 2012, Mr. Bach sent to the Succession a *Notice of Annual Shareholders' Meeting* for Decatur to be held on October 24, 2012 (the "October Shareholders' Meeting"), which provided a list of items to be discussed and/or voted upon at the October Shareholders' Meeting. *See* **Exhibit 1** hereto. Two such items were:

> To authorize the President of the Corporation to renew the current lease for the operation of its Conti Street parking lot for a period of one (1) year, subject to the right of the Corporation to cancel that lease upon giving a 30-day notice to the lessee in the event of a change in the ownership of the Corporation's 60% majority shareholder interest[.]
>
> [and]
>
> To authorize an increase in the Corporation's management fee [from $500] to $1,000 per month, exclusive of reimbursements for necessary expenses that may be incurred from time to time on behalf of the Corporation.

12.    The agenda for the October Shareholders' Meeting was provided to Plaintiff upon purchase of the Succession's shares of Decatur.

13.    Prior to the October Shareholders' Meeting, KD Gretna requested certain documentation from Decatur, including the leases on the Parking Property and the Building. *See* **Exhibit 2** hereto.

3

14.     The October Shareholders' Meeting was rescheduled for and held on October 23, 2012 in New Orleans, Louisiana. Present were Mr. Bach, Mrs. Bach, Mr. Ducote, and Ms. Bernard.

15.     At October Shareholders' Meeting, a motion was made to authorize renewal of the lease of the Parking Property to 519 Conti Street, Ltd. ("519 Conti), a company solely owned and controlled by Mr. Bach, for the rate of $2,000 per month-- a lease that had been in place for at least the previous decade. Mr. Ducote objected to the lease renewal. A vote on the motion was deferred until a future meeting. *See* **Exhibit 3** hereto.

16.     Also at the October Shareholders' Meeting, a motion was made to increase Decatur's management fee from $500.00 to $1,000.00 per month. Mr. Ducote objected to the management fee increase as being unreasonably high. Mr. Ducote voted against the management fee increase, but the increase was nonetheless approved.

17.     On October 30, 2012, KD Gretna wrote to Mr. Bach as President of Decatur, offering to pay Decatur $48,000 a year to lease the Parking Property – twice the amount then being paid by 519 Conti to lease the Parking Property. In that correspondence, KD Gretna also asked Mr. Bach to "refrain from taking any action which would result in a long-term obligation of the corporation." *See* **Exhibit 4** hereto, item 6.

18.     In the October 30, 2012 correspondence to Mr. Bach, KD Gretna also expressed concerns regarding the increased management fee, stating: "At the meeting you and the other 60% shareholders voted to increase your management fee from $500 a month to $1,000 a month to reflect the amount of work you have performed over the past year. Much of that work was… for the benefit of 519 Conti Street, Ltd. Just so you [are] aware, commercial property management companies charge between 3-5% for the property management services. Based on the revenue we have collected, that fee would be less than what you are currently being paid at the rate of $500 per month." *See id.,* item 9.

19.     On December 3, 2012, Mr. Bach sent to Mr. Ducote a *Notice of Special Meeting of Shareholders.* The notice stated that a special meeting of the shareholders of Decatur would be held on December 17, 2012 in New Orleans, Louisiana in order to "elect a Director of the

Corporation" (the "December Shareholders' Meeting"). *See* **Exhibit 5** hereto. Plaintiff received the written notice on December 4, 2012.

20.     On December 5, 2012, Plaintiff informed counsel for Mr. Bach and Decatur that a shareholders' meeting would not be necessary if the only purpose was to elect Mr. Bach as the sole director of Decatur.  In that correspondence, Plaintiff also requested "current and proposed leases…." *See* **Exhibit 6** hereto. Decatur has never provided copies of any leases to KD Gretna.

21.     On December 7, 2012, Plaintiff requested that a shareholders' meeting be held during the week of December 10, 2012, or if the week of December 10 was not convenient, on December 17, 2012 as originally scheduled, and that all deferred items from the October meeting be added to the agenda for the December Shareholders' meeting, including (among other items) the renewal of the lease on the Parking Property and the lease of the Building. *See* **Exhibit 7** hereto.

22.     On December 10, 2012, Mr. Ducote received a letter from counsel for Mr. Bach and Decatur stating that "[t]he Notice of the shareholders meeting on December 17, 2012, has, as its sole purpose, the election of a director for the Corporation. Sidney [Bach] and I are willing to meet with you and your attorney after the meeting to address the other items contained in your memo." *See* **Exhibit 8** hereto.

23.     On December 12, 2012, Plaintiff filed the original Verified Petition for Injunctive Relief (the "Original Petition for Injunctive Relief") in the action captioned *KD Gretna Properties, L.L.C. v. Decatur Realty Corp. and Sidney Bach*, which was assigned case no. 2012-11563 and assigned to Division H, Section 12 (the "Injunction Suit") and served the Original Petition for Injunctive Relief upon Defendants and counsel for Decatur and Mr. Bach. The Original Petition sought to enjoin Decatur Realty Corporation and Sidney Bach, its majority shareholder and sole Director, from (a) renewing the lease of the Parking Property to 519 Conti; and/or (b) making any alterations to or destroying any of Decatur's books and records presently in the possession or control of Defendants.

24.     On December 12, 2012, Plaintiff also filed in the Injunction Suit a Motion for Temporary Restraining Order (the "Motion for TRO"), without seeking issuance of the

5

temporary restraining order ("TRO"), and served the Motion upon Defendants and counsel for Decatur and Mr. Bach.

25.    On December 13, 2012, Defendants agreed not to enter into any lease on the Parking Property or the Building until after the December Shareholders' Meeting (*see* **Exhibit 9 (in globo)** hereto), and on December 14, 2012, Plaintiff agreed to defer its request for a TRO until after the December Shareholders' Meeting (*see* **Exhibit 10** hereto).

26.    On December 14, 2012, counsel for KD Gretna requested "a copy of the current lease of the parking lot, and, in the event that the renewal terms were already in the process of being renegotiated, any proposed lease of the parking lot." *See* **Exhibit 10** hereto. Decatur provided no information to KD Gretna in response to this request.

27.    On December 17, 2012, the December Shareholders' Meeting was held in New Orleans, Louisiana. Present were Mr. Bach, Mr. Ducote, Ms. Bernard, counsel for Decatur and Mr. Bach, and counsel for KD Gretna. A court reporter transcribed the proceedings. At the meeting, Mr. Bach re-elected himself as Decatur's sole Director. *See* **Exhibit 11** hereto at pp. 7-8. Upon information and belief, at a subsequent meeting of the Directors of Decatur, Mr. Bach re-elected himself President and elected his wife, Patricia Bach, Secretary and Treasurer.

28.    During the December Shareholders' Meeting, the deferred items from the October meeting were perfunctorily discussed. With respect to the Decatur Properties, Mr. Ducote requested that Mr. Bach provide him, as Decatur's 40.56 percent shareholder, with information regarding the terms of any proposed new lease on the Parking Property or the Building. This request was denied. *Id.* at pp. 22-23.

29.    On December 17, 2012, immediately following the December Shareholders' Meeting, counsel for KD Gretna again requested the terms of any proposed parking lot lease, via email to counsel for Decatur and Mr. Bach, and offered to pay $7,500 per month to lease the Parking Property. "We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree

to this request, which is clearly in the best interests of the corporation." *See* **Exhibit 12** hereto. This offer was reiterated in an email from counsel for KD Gretna to counsel for Decatur and Mr. Bach on December 19, 2012. *See* **Exhibit 13** hereto.

30.     On December 17, 2012, counsel for Decatur and Mr. Bach advised that Mr. Bach was on a plane, implying he could not get an answer to KD Gretna's request for proposed Parking Property lease terms, and on December 18, 2012, counsel for Decatur and Mr. Bach wrote to counsel for KD Gretna "[KD Gretna's] request is denied." *See* **Exhibit 14** hereto.

31.     On December 19, 2012, counsel for KD Gretna again requested, via email to counsel for Decatur and Mr. Bach, that he "advise whether a lease of the parking lot and a lease of the building have been negotiated and further, whether a lease of either has been entered into." *See* **Exhibit 15** hereto.

32.     Also on December 19, 2012, counsel for KD Gretna, via email to counsel for Decatur and Mr. Bach, provided such counsel with notice of KD Gretna's intention to file in the Injunction Suit an Amended and Restated Verified Petition for Preliminary and Permanent Injunction ("Amended Petition"), along with a Second Motion for Temporary Restraining Order and Preliminary Injunction (the "Second Motion for TRO") prohibiting the Defendants from (a) entering into any lease of the Parking Property or the Building without first providing Plaintiff with information regarding the terms of any proposed lease(s); and/or (b) entering into a long-term lease of the Parking Property that does not maximize the value to Decatur and its shareholders. *See* **Exhibit 13** hereto.

33.     On December 19, 2012, the Amended Petition and Second Motion for TRO were filed in the Injunction Suit and served upon Defendants and counsel for Defendants.

34.     At 9:55 on the night of December 19, 2012, counsel for Decatur and Mr. Bach advised counsel for KD Gretna that "[Decatur] has signed leases for both the parking lot and the building," despite Mr. Bach's knowledge of the pending Second Motion for TRO. *See* **Exhibit 16** hereto.

35.     On December 20, 2012, KD Gretna filed in the Injunction Suit the Second Amended and Restated Petition for Preliminary and Permanent Injunction (the "Second

7

Amended Petition") and the Third Motion for Temporary Restraining Order (the "Third Motion for TRO"), seeking a temporary restraining order and preliminary and permanent injunction in favor of Decatur enjoining the operation of any lease entered into by Decatur and/or Mr. Bach with regard to the Building and/or the Parking Property, since the filing of the Injunction Suit on December 12, 2012.

36. On December 20, 2012, the temporary restraining order (the "TRO") was signed by the Duty Judge, the Honorable Robin M. Giarrusso, and a hearing was set before the Honorable Michael G. Bagneris for December 28, 2012 at 10:00 a.m. on Plaintiff's application for a preliminary injunction (the "December 28, 2012 Hearing").

37. On December 21, 2012, Decatur and Mr. Bach submitted to Judge Giarrusso a letter requesting a status conference "with respect to the issuance of the Temporary Restraining Order..." A status conference was thus held on the morning of December 21, 2012 in the chambers of Judge Giarrusso, after which the TRO was dissolved by Judge Giarrusso.

38. On December 26, 2012, in accordance with the Court's Order dated December 20, 2012, KD Gretna filed in the Injunction Suit the Affidavit of Wayne Ducote in support of KD Gretna's Third Motion for TRO and the Second Amended Petition.

39. On December 27, 2012, Decatur and Mr. Bach filed in the Injunction Suit the Affidavit of Sidney Bach, Peremptory Exceptions of No Right of Action and No Cause of Action (the "Exceptions"), a memorandum in support of the Exceptions, and a memorandum in opposition to the Third Motion for TRO and the Second Amended Petition.

40. On December 28, 2012, a hearing was held in the chambers of the Honorable Michael G. Bagneris on KD Gretna's request for a preliminary injunction in the Injunction Suit, along with the Exceptions. Judge Bagneris ruled from the bench and granted the Exceptions, but a final judgment has not yet been entered.

41. Counsel for Decatur and Mr. Bach represented on December 28, 2012 that the leases for both the Parking Property and the Building were signed by Mr. Bach on December 17, 2012, two days prior to notifying counsel for KD Gretna, despite other correspondence

8

exchanged between counsel, repeated requests for notice from KD Gretna, and KD Gretna's offer to lease the Parking Property for up to $7,500 per month.

42.    Upon information and belief, despite the implication contained within Mr. Bach's counsel's December 19, 9:55 p.m. email that the leases were fully executed, at least the Building lease was not countersigned by the tenant until sometime after December 19, 2012.

43.    The leases on the Parking Property and the Building are both long-term leases that do not maximize the value to Decatur and its shareholders and became effective on January 1, 2013.

44.    Upon information and belief, the Parking Property lease has a value substantially lower than the $7,500 per month offered by Mr. Ducote on December 17, 2012.

45.    Upon information and belief, the Building Lease has a value of $10,000 per month, but the other terms that affect value are unknown.

46.    As Mr. Ducote stated at the December Shareholders' Meeting, while rent of $10,000 for the Building may be reasonable, without information on the other terms of the lease, including "escalations, like terms, right of first refusal, definition of triple net, tenant obligations, lessor obligations and building improvements which [Decatur] will be required to fund insurance, default, security, uses, casualty losses, subleasing transfers, tenant mortgages, maintenance, repairs and remedies," a $10,000 per month lease may be in fact "worth $50 a month or $50,000 a month." *See* **Exhibit 11** hereto at pp. 34-35.

47.    At all times pertinent hereto, Mr. Bach was aware that (a) Mr. Ducote is an experienced local parking and commercial real estate business professional who could provide valuable input regarding the terms of any proposed lease(s) of the Decatur Properties; and (b) it would have been in the best interest of the corporation and its shareholders for Mr. Ducote to have an opportunity to review the proposed lease terms prior to the execution of any lease(s) on either of the Decatur Properties. Notwithstanding this knowledge and Mr. Ducote's numerous requests for information regarding the proposed lease terms, Mr. Bach entered into leases on both of the Decatur Properties without first providing Mr. Ducote with any information regarding the proposed lease terms.

9