UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KD GRETNA PROPERTIES, LLC | * | CIVIL ACTION NO: 13-00218 |
| | * | |
| Versus | * | JUDGE: ELDON E. FALLON |
| | * | |
| DECATUR REALTY CORP. AND | * | SECTION: L |
| SIDNEY BACH | * | |
| | * | MAG. JUDGE: WILKINSON |
| | * | |
| | * | MAG. DIV.: 2 |

* * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(6)

Defendant Sidney Bach provides the following memorandum in support of his motion to dismiss the plaintiff's sole claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.   INTRODUCTION**

This is a derivative action. The plaintiff, KD Gretna Properties, LLC ("KD Gretna"), is a minority shareholder of Decatur Realty Corporation ("Decatur Realty"). Sidney Bach is the corporation's majority shareholder, officer, and director.

KD Gretna chafes at the state-law limitations on the rights of minority shareholders— especially *new* minority shareholders. Louisiana law does not grant shareholder-inspection rights until the requesting party has owned its shares for at least six months. Aside from its role as minority shareholder of Decatur Realty, KD Gretna sought a business relationship with that corporation. Decatur Realty owns a parking lot in the French Quarter, and KD Gretna wanted to lease it for the lowest sum possible.

KD Gretna—which acquired its shares less than six months ago—was ultimately unsuccessful in 1) gaining access to corporate documents and information from Decatur Realty, and 2) leasing the parking lot from that corporation. A torrent of unsuccessful litigation, and then this suit, followed.  KD Gretna asserts a single claim against Mr. Bach: alleged breach of fiduciary duty as manifested by several alleged actions and inactions. Even accepting the factual assertions as true, none of this presents a plausible claim for relief under controlling state law.

First, KD Gretna complains that Mr. Bach refused to comply with his requests for information about the corporation's business affairs. As a matter of law, KD Gretna has no right to inspect Decatur Realty's books and records because it has been a shareholder for less than six months. La. Rev. Stat. Ann. §12:103(D)(1)(a) is clear on this point. Especially under the business judgment rule, abiding by the letter of the law cannot constitute a breach of fiduciary duty, much less one in bad faith.  *See* La. Rev. Stat. Ann. §12:91.

And second, in its dual capacity as minority shareholder and unsuccessful bidder for the parking-lot lease, KD Gretna complains that Mr. Bach improperly rejected an "offer" it made. It asserts that the "offer" was substantially higher than the lease Decatur Realty later signed with a third party. The Court need not accept at face value KD Gretna's *characterization* of its overture as an offer because that document is attached to the petition. The document, as a matter of law, is *not* an offer. It is an unorthodox request by a shareholder/bidder to learn what its competition was offering for the parking-lot lease so that it might consider topping the offer by an unstated amount (perhaps $1). The business judgment rule does not dictate negotiating strategy to corporate officers and directors. *As a matter of law, Mr. Bach had no legal duty to give KD Gretna a free, de facto right of first refusal for the parking-lot lease.* Nothing prevented KD Gretna from submitting its highest and best offer without regard to other offers. It chose not to,

based on self-interest. The law did not require Mr. Bach to play along with KD Gretna's self-serving plan.

## II.  BACKGROUND

For purposes of this motion, the Court accepts as true the plaintiff's factual allegations, but not its conclusions or unwarranted inferences.[1]

### A.  The corporation, its shareholders, and KD Gretna's interest in the parking-lot lease.

Decatur Realty is a Louisiana corporation that owns two principal assets: a building in the French Quarter, and a parking lot.[2] Decatur Realty has two shareholders: Sidney Bach owns 59.44% of the corporation; and KD Gretna owns 40.56%.[3] KD Gretna became a shareholder in late October 2012, less than six months ago.[4] KD Gretna's sole member is Wayne Ducote, who "has been actively and successfully involved in the parking business for 45 years and is extremely knowledgeable about that business."[5]  As the petition reveals, KD Gretna's various actions and requests stem from its status as 1) a minority shareholder of Decatur Realty and 2) a potential lessee of the corporation's parking lot.

Between October 2012 and January 2013, KD Gretna "made numerous oral and written requests to review Decatur's books and records."[6] Its requests were exceedingly broad, but they included, specifically, any current and proposed leases for Decatur Realty's properties.[7] KD

---

[1] *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[2] Plaintiff's Original Verified Petition for Declaratory Judgment, Breach of Fiduciary Duty, and Damages, ¶8, Rec. Doc. 7-1, p. 3.

[3] *Id.*, ¶6, p. 3.

[4] *Id.*

[5] *Id.*, ¶9, p. 3.

[6] *Id.*, ¶10, p. 4.

[7] *Id.*; *see also* Exh. 2, p. 17 (requests going back 10 years).

Gretna's requests coincided with its desire to lease the parking lot. In fact, beginning in October 2012, KD Gretna offered on numerous occasions to lease the parking lot for $48,000 per year (or $4,000/month).[8] Citing state law, Mr. Bach refused to provide the proposed leases, in particular, or open Decatur Realty's books and records, in general, to KD Gretna.[9] La. Rev. Stat. Ann. § 12:103(D)(1)(a) gives inspection rights only to shareholders of record for at least six months. KD Gretna had been a shareholder for only two months in December 2012. Mr. Bach agreed, however, to give KD Gretna any legally required information.[10]

### B. The shareholders' meeting, and KD Gretna's later request to learn what the other bidder was offering.

On the morning of December 17, 2012, the parties and their counsel attended an on-the-record shareholders' meeting.[11] KD Gretna reiterated its $48,000/year (or $4,000/month) offer to lease the parking lot and described it as "fair to the corporation."[12] Later that day, perhaps sensing that there was another bidder in the wings, KD Gretna asked its counsel to send the following "request" to Decatur Realty's counsel.[13] The petition erroneously characterizes this *request* as an *offer* to lease the parking lot for $7,500/month. As shown below, it is not:

\*   \*   \*

> After Decatur Realty Corporation's shareholders' meeting this morning [Dec. 17, 2012], I had a chance to discuss further the parking lot lease with Mr. Ducote [of KD Gretna]. You all were clear during this morning's meeting that your client has no obligation to provide Mr. Ducote with any information with regard to that lease. Of course we do not agree with that position, and

---

[8] *Id.*, ¶17, p. 5.

[9] *Id.*, Exh. 14, pp. 52-53.

[10] *Id.*

[11] *Id.*, ¶27, p.7.

[12] *Id.*, Exh. 11, p. 15, Rec. Doc. 7-1, p. 41.

[13] *Id.*, Exh. 12, pp. 49-50.

4

> from a financial standpoint, it appears that generating as much income as possible from the parking lot is in the best interests of the corporation, particularly if the lease being contemplated is a long term lease. The $4,000/mo. rent over a ten year term discussed by Mr. Ducote at today's shareholders' meeting was an offer he made, contemplating only the current lease as he understands it: $2,000/mo. paid Mr. Bach's company, 519 Conti Street, Ltd., expiring at the end of this year [December 31, 2012]. *We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree to this request*, which is clearly in the best interests of the corporation.[14]

\*   \*   \*

At 5:37 p.m. on the same day, December 17, Decatur Realty's counsel replied that Mr. Bach was traveling and unavailable; he wrote to convey a denial of KD Gretna's request on December 18.[15] Finally, on December 19, Decatur Realty informed the plaintiff that it had leased the parking lot to a third party.[16] There is no allegation that Mr. Bach has any direct or indirect interest in that lessee, which agreed to pay a monthly rent less than $7,500.[17]

### C. KD Gretna's suit, and Mr. Bach's timely removal.

KD Gretna sued Mr. Bach (and Decatur Realty, nominally) in the Civil District Court for the Parish of Orleans on January 3, 2013. Mr. Bach removed the case on February 5, 2013, within 30 days of service on the first-served defendant.[18]

---

[14]   *Id.* (emphasis added).

[15]   *Id.*, Exh. 14.

[16]   *Id.*, Exh. 16.

[17]   *Id.*, ¶54(d), p. 12.

[18]   Defendant Sidney Bach's Notice of Removal, Rec. Doc. 1.

5

### III. LAW AND ARGUMENT

#### A. The plaintiff bears the burden to plead the elements of a claim that is plausible on its face; the role of attachments.

When a court considers a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege,* 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

Under Rule 12(b)(6), a court should consider documents attached to the complaint. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (citing 5B Charles Alan Wright *et al.*, Federal Practice and Procedure, § 1357 (3d ed. 2004 & supp. 2007)). KD Gretna's petition attaches as exhibits its various requests for information, its *actual* offer and its *alleged* offer to lease the parking lot, and the parties' correspondence. All of this material is at the

Court's disposal in ruling on this motion to dismiss. It is fatal to the plaintiff's effort to state a viable claim against Mr. Bach.

### B. KD Gretna fails to state a plausible claim against Mr. Bach; the business judgment rule.

KD Gretna asserts a single claim, ostensibly on behalf of Decatur Realty (and not as a disappointed bidder for the parking-lot lease). The framework for analyzing the claim is the business judgment rule and La. Rev. Stat. Ann. § 12:91. Liability depends upon a showing of gross negligence or intentional misconduct:

> A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinary prudent men would exercise under similar circumstances in like positions; *however, a director or officer shall not be held personally liable to the corporation or the shareholders thereof for monetary damages unless the director or officer acted in a grossly negligent manner as defined in Subsection B of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty.* Nothing herein contained shall derogate from any indemnification authorized by R.S. 12:83.
>
> B. As used in this Section, "gross negligence" shall be defined as a reckless disregard of or a carelessness amounting to indifference to the best interests of the corporation or the shareholders thereof.
>
> C. A director or officer who makes a business judgment in good faith fulfills the duty of diligence, care, judgment, and skill under Subsection A of this Section if the director or officer:
>
>> (1) Does not have a conflict of interest with respect to the subject of the business judgment.
>>
>> (2) Is informed with respect to the subject of the business judgment to the extent the director or officer reasonably believes to be appropriate under the circumstances.
>>
>> (3) Rationally believes that the business judgment is in the best interests of the corporation and its shareholders.

> D. In fulfilling his duties under this Section, a director or officer is entitled to rely upon records and other materials and persons as specified in R.S. 12:92(E).
>
> E. *A person alleging a breach of the duty of diligence, care, judgment, and skill owed by an officer or director under Subsection A shall have the burden of proving the alleged breach of duty, including the inapplicability of the provisions as to the fulfillment of the duty under Subsections C and D* and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the corporation.
>
> F. The provisions of this Section shall apply to all business organizations, whether incorporated or unincorporated, formed under Louisiana law.[19]

A director shall be "fully protected" from potential liability when he relies in good faith upon information or opinions presented to the board by sources acting within their field of expertise. La. Rev. Stat. Ann. § 12:92(E).

KD Gretna's claim has two facets. For ease of analysis, Mr. Bach addresses separately the contentions that 1) he improperly declined to produce the corporation's books and records to one not entitled to them, and 2) he acted improperly in rejecting KD Gretna's alleged $7,500/month offer to lease the parking lot in December 2012.

> **1. KD Gretna has no legal right to inspect Decatur Realty's books and records, in general, or potential competing lease proposals, in particular.**

KD Gretna alleges that "Mr. Bach acted in bad faith and breached his fiduciary duties" in various ways.[20] Four of them concern alleged denials of "requests for information," especially about lease offers that competed with KD Gretna's offer, and alleged refusals to meet and discuss leasing issues with KD Gretna, whose member is alleged to be knowledgeable on the

---

[19] La. Rev. Stat. Ann. § 12:91 (emphasis added).

[20] Petition, ¶54, Rec. Doc. 7-1, p. 11.

8

subject.[21] The complaints are simply meritless. Louisiana law grants a minority shareholder *no inspection rights* until it has owned the requisite number of shares "at least six months." La. Rev. Stat. Ann. § 12:103(D)(1)(a). KD Gretna admittedly had not owned shares in Decatur Realty for six months when it requested corporate information—and it still hasn't. As a matter of law, an officer/director who follows the letter of the law cannot be said to act in bad faith or to have breached a duty to anyone.

To the extent that KD Gretna suggests that Mr. Bach had a duty to discuss management decisions with Mr. Ducote, it is equally mistaken. Minority shareholders have no right to participate in managing the corporation's affairs. Indeed, Title 12 affirmatively states that, subject to the articles, bylaws, or particular statutes, "*all the corporate powers shall be vested in, and the business affairs of the corporation shall be managed by, a board of directors*…." La. Rev. Stat. Ann. § 12:81(A) (emphasis added).  As a leading treatise explains, Title 12 "follows the very traditional approach of relegating shareholders to an *indirect, passive role*:  in the regular course of corporate affairs, their function is simply to choose other persons, the directors, to manage the corporation on their behalf."  Glenn G. Morris, *et al.*, 7 La. Civil L. Treatise, Business Organizations, §14.02 (emphasis added).

> **2. As a matter of law, KD Gretna did not convey a $7,500/mo. offer for the parking lot, and Mr. Bach had no legal duty to tell one bidder what a competing bidder offered.**

KD Gretna's remaining complaints concern Mr. Bach's allegedly "[f]ailing to accept [p]laintiff's offer to lease" the parking lot for $7,500 per month, and instead leasing to a third party for a lesser sum.[22] KD Gretna's theory fails for two reasons. First, its December 17, 2012 communication was a request for inside information to help it negotiate *against* Decatur Realty:

---

[21]     *Id.*, ¶¶54(a), (b), (e), and (f), p. 12.

[22]     *Id.*, ¶54(d), p. 12.

9

It was not an "offer." And second, the law imposed no obligation on Mr. Bach to tell KD Gretna (or any other potential bidder) what a third party might be willing to pay to lease the parking lot.

Because the supposed "offer" is attached to the petition, the Court need not (and should not) accept KD Gretna's present characterization of it. It was not an offer. This is most clearly shown by the fact that it conveyed no terms that, upon Decatur Realty's acceptance, would result in a binding contract. *See* La. Civ. Code. art. 1927 ("A contract is formed by the consent of the parties established through offer and acceptance."). As Professor Saul Litvinoff has explained, an *offer* has a specific meaning in Louisiana law:

> An offer is a proposal to do something or to refrain from doing something in return for a counter-promise, an act, or forbearance. To be considered properly as such, the offer must fulfill the following three requirements clearly established in the Louisiana Civil Code:
>
> (a) The design to give the other party the right of concluding the contract by his assent,
>
> (b) The offeror's intention to obligate himself, [and]
>
> (c) A serious intent.[23]

At the risk of stating the obvious, KD Gretna's request did *not* give Decatur Realty the ability to create a contract with its assent, and KD Gretna did *not* show an intention to obligate itself. Because KD Gretna did not make a $7,500/month offer for the parking lot, it necessarily follows that Mr. Bach could not have rejected it—much less done so in bad faith.

The flaw in KD Gretna's claim is substantive, not technical. Instead of increasing its $4,000/month offer (conveyed in October 2012), KD Gretna sought to exploit its position as a shareholder of Decatur Realty. It hoped to learn how much *its competitor* was willing to pay for

---

[23]  Saul Litvinoff, *Offer and Acceptance in Louisiana Law: A Comparative Analysis: Part I – Offer*, 28 La. L. Rev. 1, 4 (1967) (footnotes omitted). Note that the Obligations articles were amended in 1984, but the amendment did not alter the definition of an offer.

the parking-lot lease. KD Gretna wanted to know "the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution," so that it could consider whether to increase its offer or stand pat.[24] KD Gretna didn't obligate itself to do anything. *It sought inside information to help it avoid paying too much for the lease.*

If KD Gretna believed that its $4,000/month offer was too low and likely to be surpassed, nothing stopped it from increasing its offer to $5,500/month, $6,500/month, or even $7,500/month. But making such an offer would have presented the risk of its acceptance. *Knecht v. Bd. of Trustees*, 591 So. 2d 690, 694 (La. 1991) ("[o]ne who proposes the contract is bound…if the other party timely assents."). And if the other bidder for the parking lot was offering, say, only $4,500/month, then KD Gretna might have paid Decatur Realty more than it had to. To negate that risk and avoid paying the corporation one dollar more than it had to, KD Gretna hoped to dictate Mr. Bach's negotiating strategy. Mr. Bach declined, so the question arises: *Is a corporate director/officer under a legal duty to tell one bidder the value of offers from competing bidders?*

We are aware of no basis in law for any such novel duty. Yet KD Gretna contends that Mr. Bach is personally liable for not agreeing to its bold request. The request doubtless would have benefitted KD Gretna. *It would receive, for free, a right akin to a right of first refusal.*[25] And having that right, it could refrain from increasing its $4,000/month offer unless and until it absolutely had to, at which point it could either choose to increase its offer or drop out of the bidding. Nothing in the law required Mr. Bach to give KD Gretna this valuable right and thereby

---

[24] Rec. Doc. 7-1, Exh. 12.

[25] A right of first refusal is the option and preferred right to buy property at the price offered by a third party in the event the owner deserves to sell it. KD Gretna's request modified the traditional formula, applying it to a lease and proposing to pay more (in its sole discretion) than the third party.

risk chasing away the other bidder. And nothing in the law dictated to Mr. Bach the negotiating strategy he had to follow in leasing the parking lot. Likewise, if Decatur Realty were entertaining multiple bids to resurface the parking lot, and one bidder requested to learn what another was offering, the corporation's management would have no duty to reveal that information to the first bidder.

And finally, KD Gretna is estopped to argue that a rental *exceeding* $4,000/month is inadequate. The record shows that KD Gretna's sole member (Wayne Ducote) invoked his expertise in the parking business, offered Decatur Realty (of which he owns 40.56%) $4,000/month to lease the parking lot, and stated at the December 2012 shareholders' meeting that his offer was "*fair to the corporation.*"[26] It urged Mr. Bach, on behalf of Decatur Realty, to accept its offer. The Court should not permit KD Gretna to reverse course now and argue that accepting an even *higher sum* from someone else caused a grievous wrong to Decatur Realty. *See also* La. Rev. Stat. Ann. § 12:92(E) (director is "fully protected" in relying in good faith upon expert opinions).

### 3. A final word about stray references to the building lease.

KD Gretna never offered to lease the *building* owned by Decatur Realty. Yet the petition at times contains collective references to the "Decatur Properties," a term that includes both the parking lot and the building. The petition is devoid of any facts to suggest that Decatur Realty may have leased its building for an inadequate sum. In fact, KD Gretna's member stated on the record of the December 2012 shareholders' meeting that $10,000/month in rent might be reasonable depending upon other lease terms.[27] The petition alleges (on information and belief) that Decatur Realty did lease the building for that sum, "but the other terms that affect value are

---

[26] Exh. 11 to Petition, p. 15, Rec. Doc. 7-1, p. 41 (emphasis added).

[27] *Id.*, pp.34-45, Rec. Doc. 7-1, p. 46.

*unknown.*"[28]  In other words, the petition alleges that the building lease might be perfectly acceptable.  That is a virtual concession that the standard of *Twombly* has not been met.  And it is no answer for the plaintiff to say that it needs discovery to learn whether it has a basis to sue.  The Court should not allow the plaintiff to use a lawsuit to circumvent state law and obtain corporate records not available to it until it has been a shareholder for six months.  La. Rev. Stat. Ann. § 12:103(D)(1)(a).

### IV.  CONCLUSION

This is an unusual case because of the plaintiff's dual capacities in the underlying events—minority shareholder and potential lessee. The facts, as alleged and as shown by the attachments to the petition, make clear that KD Gretna has no legally viable claim against Sidney Bach:

- KD Gretna has no shareholder inspection rights as a matter of law, so Mr. Bach could not improperly deny it such rights; and

- KD Gretna did *not* offer to lease the parking lot for $7,500/month, and meaning that the offer could not have been rejected, Mr. Bach had no legal duty to reveal to the plaintiff the amount offered by a competing bidder.

The Court should grant this motion and dismiss KD Gretna's unfounded claim against Sidney Bach.

---

[28]  Petition, ¶45, Rec. Doc. 7-1, p. 10 (emphasis added).

Respectfully submitted,

/s/      Thomas M. Flanagan
Thomas M. Flanagan (#19569)
Andy Dupre (#32437)
Anders F. Holmgren (#34597)
**FLANAGAN PARTNERS LLP**
201 St. Charles Avenue, Suite 2405
New Orleans, Louisiana  70170
Telephone: (504) 569.0235
Facsimile: (504) 592.0251

Counsel for Sidney Bach

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served upon opposing counsel of record this 21st day of February, 2013, by e-filing same into the CM/ECF system, which will automatically deliver a copy of same to all counsel.

/s/      Thomas M. Flanagan