UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KD GRETNA PROPERTIES, LLC** | \* | **CIVIL ACTION** |
| | \* | |
| **VERSUS** | \* | **NO. 13-218** |
| | \* | |
| **DECATUR REALTY CORP., ET AL.** | \* | **SECTION "L"(4)** |

### ORDER AND REASONS

The Court has pending before it Defendant Sidney Bach's Motion to Dismiss for Failure to State a Claim. (Rec. Doc. 11). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

**I.   BACKGROUND**

This case is a shareholder derivative action involving Defendant Decatur Realty Corporation. Decatur has only two shareholders: the majority shareholder and president, Defendant Sidney Bach, owns 59.44 percent of shares; Plaintiff KD Gretna Properties, LLC owns the remaining 40.56 percent. (Rec. Doc. 1-1 at p. 73, ¶ 6). Decatur owns two properties (a parking property and a building) in New Orleans, and its only business is leasing out those properties. *Id.* at ¶ 8. KD Gretna became a shareholder of Decatur on October 22, 2012, after purchasing the shares from the Succession of Dorothy Shaumburger. *Id.* at ¶ 6.

The central conflict in this case arises out of KD Gretna's attempts to lease Decatur's parking property. KD Gretna claims to have initially requested documentation from Decatur before the October Shareholders' Meeting regarding the terms of current and future leases. *Id.* at p. 74, ¶ 13. At that meeting, a motion was allegedly made to authorize the renewal of the lease of the parking property to 519 Conti Street, Ltd., a company owned solely by Bach. *Id.* at p. 75,

¶ 15. 519 Conti had been paying rent of $2,000 per month, and that arrangement had been in place for approximately a decade. *Id.* Voting on that motion was apparently deferred until the December Shareholders' Meeting. *Id.* Additionally, a motion to increase Decatur's management fee from $500 per month to $1,000 per month was allegedly approved over KD Gretna's objection. *Id.* at ¶ 16. After the October Shareholders' Meeting, KD Gretna claims to have sent Bach an offer to lease the parking property for $4,000 per month. *Id.* at ¶ 17. KD Gretna also allegedly expressed concerns to Bach regarding the amount of the management fee. *Id.* at ¶ 18. KD Gretna alleges that it received either no response or an inadequate response.

On December 12, 2012, KD Gretna filed a Verified Petition for Injunctive Relief in Civil District Court for the Parish of Orleans. In that case, KD Gretna sought to enjoin Decatur and Bach both from renewing the lease to 519 Conti and from altering or destroying any of Decatur's records. KD Gretna also moved for a TRO against both Defendants, but on December 13, 2012, the Defendants agreed to postpone any renewal of the lease until after the next shareholders' meeting, and KD Gretna deferred its TRO request until that time. *Id.* at p. 77, ¶ 25.

KD Gretna continued to request information both before and during the December Shareholders' Meeting, but its requests were allegedly either ignored or denied. *Id.* at ¶¶ 26, 28. After the December Shareholders' Meeting, KD Gretna claims to have made another offer on the parking property, this time for $7,500 per month, and requested an opportunity to make a counter-offer before Decatur executed any further lease on that property for less than that amount. *Id.* at pp. 77-78, ¶ 29.[1] Bach allegedly denied KD Gretna's request. *Id.* at p. 78, ¶ 30.

On December 19, 2012, KD Gretna filed an Amended and Restated Verified Petition,

---

[1] Bach disputes the characterization of KD Gretna's request as an offer, describing it only as a request for first right of refusal. (Rec. Doc. 11-1 at 2). The details of this dispute are described below.

along with a second motion for a TRO. That evening, counsel for Decatur and Bach allegedly notified KD Gretna that Decatur had signed a lease on at least one of the properties. *Id.* at ¶ 34. On December 20, 2012, KD Gretna filed a Second Amended and Restated Petition, along with yet another motion for a TRO. Judge Robin M. Giarrusso granted the TRO, but on December 28, 2012, following a hearing, Judge Michael G. Bagneris maintained Decatur and Bach's exceptions of no cause of action and no right of action, and dismissed KD Gretna's petitions.

On January 3, 2013, KD Gretna filed the instant case. The Original Verified Petition claims that Bach breached his fiduciary duties to Decatur in seven different respects:

   a. Repeatedly denying Plaintiff's requests for information regarding the terms of any current and/or proposed leases of the Decatur Properties;

   b. Entering into long-term leases of the Decatur Properties without first providing Plaintiff with information regarding the terms of those leases;

   c. Entering into long-term leases of the Decatur Properties that do not maximize the value to Decatur and its shareholders;

   d. Failing to accept Plaintiff's offer to lease the Parking Property for $7,500.00 per month and instead entering into a long-term lease of the Parking Property for a value substantially lower than $7,500 per month;

   e. Failing to meet in good faith with Plaintiff at the court reporter-transcribed December Shareholders' meeting;

   f. Failing to discuss the proposed leases of the Decatur Properties at the December Shareholders' Meeting; and

   g. Entering into long-term leases on December 17, 2012, on the Decatur Properties with knowledge of Plaintiff's pending offer and failing to notify Plaintiff that the leases had been signed until late in the night of December 19, 2012.

(Rec. Doc. 1-2 at pp. 1-2, ¶ 54).[2] KD Gretna requests both damages for the breach of fiduciary duty and a declaratory judgment stating that the leases of both properties are invalid. *Id.* at pp. 2-3, ¶ V. On February 5, 2013, Bach removed to this court, asserting diversity jurisdiction.[3]

On February 19, 2013, KD Gretna filed a Motion to Disqualify Lowe Stein as Counsel for Decatur Realty Corporation. (Rec. Doc. 8). KD Gretna argued that Lowe Stein's continued representation of Decatur presented a conflict of interest with Lowe Stein's duty to its former client, Sidney Bach. But after oral argument on March 20, 2013, the Court denied KD Gretna's motion under *Robinson v. Snell's Limbs and Braces of New Orleans, Inc.*, 538 So. 2d 1045 (La. Ct. App. 1989), which expressly allows for the concurrent representation of both a director accused of mismanagement and a nominal corporate defendant in a derivative suit. (Rec. Doc. 30).

On March 15, 2013, KD Gretna filed a Motion to Leave to File its Verified First Amended Complaint for Declaratory Judgment, Breach of Fiduciary Duty, and Damages. (Rec. Doc. 26), which the Court has not yet ruled on. The proposed amendments would add a claim against Bach and Decatur for voluntarily leasing all or substantially all of Decatur's assets without authorization by a two-thirds vote of the shareholders, in violation of § 12:121. There are no other material changes to the original Petition for Damages.

## II.   PRESENT MOTION

The motion presently before the Court for ruling is Bach's Motion to Dismiss Under Rule

---

[2] KD Gretna alleges that after the case was removed to this Court, Decatur and Bach provided a copy of the lease for the parking property, which indicates that 519 Conti is leasing the property at a rate of $62,500 per year, or approximately $5,200 per month. (Rec. Doc. 8-1 at 4-5). Decatur alleges that no lease has been signed on the other property. (Rec. Doc. 15 at 3 n.5).

[3] Decatur is a Louisiana corporation. KD Gretna is an LLC in either Louisiana or Florida, but its sole member, Wayne Ducote, is a Florida citizen. Bach is a citizen of North Carolina.

12(b)(6). (Rec. Doc. 11). Bach makes several arguments in support of his motion. First, he argues that KD Gretna has not alleged gross negligence, as Louisiana law requires in a suit against a corporate officer for breach of fiduciary duty. Next, Bach argues that KD Gretna has no right to inspect corporate records because it has not been a shareholder for six months; that, as a minority shareholder, KD Gretna has no right to participate in company management; that, contrary to KD Gretna's representations, KD Gretna did not actually make an offer to lease the parking property; and that KD Gretna is estopped from objecting to the lease to 519 Conti because KD Gretna's initial offer was lower than the rent ultimately paid by 519 Conti.

KD Gretna opposes Bach's motion (Rec. Doc. 21) and argues that it has properly pled a claim against Bach for breach of fiduciary duty because, if the allegations in the Petition are assumed to be true, they reflect reckless disregard for the best interests of the corporation, which is sufficient to show gross negligence under Louisiana law. Also, to the extent that Bach disputes the Petition's factual allegations, KD Gretna argues that this constitutes a factual issue for the jury to decide. Finally, KD Gretna argues that despite having been a shareholder for less than six months, KD Gretna had a right to the information it requested because of the general obligation of officers and directors to disclose facts within their knowledge to shareholders.

### III.   LAW AND ANALYSIS

#### A.   Standard on Motions to Dismiss

When a court considers a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief

that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**B.     Analysis**

        **a.     Breach of Fiduciary Duty Generally**

KD Gretna's claims against Bach involve several alleged breaches of fiduciary duty. Section 12:91 is the main statute governing the duty owed by directors and officers of a corporation to its shareholders. Its relevant provisions are as follows:

> A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinary prudent men would exercise under similar circumstances in like positions; however, a director or officer shall not be held personally liable to the corporation or the shareholders thereof for monetary damages unless the director or officer acted in a grossly negligent manner as defined in Subsection B of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortious conduct or intentional breach of his duty of loyalty. . . .
>
> B. As used in this Section, "gross negligence" shall be defined as a reckless disregard of or a carelessness amounting to indifference to the best interests of the corporation or the shareholders thereof.
>
> C. A director or officer who makes a business judgment in good faith fulfills the duty of diligence, care, judgment, and skill under Subsection A of this Section if the director or officer:
>
> > (1) Does not have a conflict of interest with respect to the subject of the business judgment.

>> (2) Is informed with respect to the subject of the business judgment to the extent the director or officer reasonably believes to be appropriate under the circumstances.
>>
>> (3) Rationally believes that the business judgment is in the best interests of the corporation and its shareholders.
>
> . . .
>
> E. A person alleging a breach of the duty of diligence, care, judgment, and skill owed by an officer or director under Subsection A shall have the burden of proving the alleged breach of duty, including the inapplicability of the provisions as to the fulfillment of the duty under Subsections C and D and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the corporation.
> . . .

La. Rev. Stat. Ann. § 12:91.

Bach argues that since the claims against him constitute a personal suit against the officer of a corporation, allegations of "gross negligence" are required in accordance with § 12:91(A) and (B). Bach contends that KD Gretna's claims against him are deficient because the Petition does not specifically allege that he was grossly negligent.

In response, KD Gretna argues that taken together, the factual allegations in the Petition are sufficient to establish Bach's "reckless disregard of . . . the best interests of the corporation," which is in turn sufficient to establish gross negligence. La. Rev. Stat. Ann. § 12.91(B). Specifically, KD Gretna points to Bach's alleged refusal of KD Gretna's $7,500 offer; Bach's alleged refusal to provide KD Gretna with proposed lease terms; Bach's alleged failure to assess (or provide information regarding) the true value of the building property; and Bach's alleged failure to maximize the value of the leases of both properties.

In support of this argument, KD Gretna cites a Louisiana appellate court case that held that a director of a nonprofit organization breached his fiduciary duty to the organization when he arranged for a piece of its property to be sold to himself. *Stokes v. Bruno*, 98-323 (La. App. 3

Cir. 10/7/98), 720 So.2d 388. Specifically, the appellate court found no error in the trial court's holding that the director breached his fiduciary duty to the organization when he "just decided a value for the property" without any formal process or consultation of the governing committee; "worked under a perceived apparent authority he could set values and complete sales on his own"; failed to disclose various facts surrounding the sale and value of the property to the corporation; and failed to investigate certain potential purchasers of the land. *Id.* at 391. As a result, the court found that the director "owed a fiduciary [duty] to the Corporation to maximize the return" and that the sale of the property constituted breach of that duty. *Id.*

KD Gretna cites *Stokes* for the proposition that failure to maximize the value of a corporation's assets can constitute a breach of fiduciary duty by the director of a corporation. This point may technically be correct, but it ignores a potentially important distinction between *Stokes* and the present case: *Stokes* involved a failure to disclose various information to the *other directors* of the corporation before the directors voted to approve the sale. *Id.* at 389 (noting that the board of directors voted to accept a recommendation to sell the property). In this case, Bach was the only director of the corporation, so there was no analogous failure to disclose to other directors. Although the Court acknowledges KD Gretna's allegations of self-dealing by Bach in leasing the parking property to an entity he allegedly controls, the Court also notes that the misconduct in *Stokes* ran much more clearly afoul of the business judgment rule. Additionally, the misconduct of the director in *Stokes* was arguably more egregious than the allegations against Bach in this case. Therefore, it is really not clear whether *Stokes* supports KD Gretna's claim that its allegations are sufficient to show reckless indifference to the interests of the corporation by Bach.

For this reason, and because of the problems with some of the more specific problems

with KD Gretna's individual allegations of misconduct listed below, the Court agrees with Bach that KD Gretna's failure to allege gross negligence is problematic. In the interest of justice, however, the Court will allow KD Gretna an opportunity to cure the defects in its Petition, rather than dismissing the Petition with prejudice.

> b. **Denial of KD Gretna's Request for Corporate Records, Including Proposed Leases**

Bach argues that he cannot be held liable for failure to provide KD Gretna with Decatur's records because, under Louisiana law, a shareholder has no right to examine a corporation's records until he or she has owned at least 5% of the corporation for at least six months. La. Rev. Stat. Ann. § 12:103(D)(1)(a). It appears to be undisputed that KD Gretna acquired its shares of Decatur in October 2012. Therefore, Bach argues that KD Gretna had no right to examine any of Decatur's records at the time of its requests in December 2012.

KD Gretna responds by arguing that Louisiana law obligates officers and directors to disclose facts within their knowledge to shareholders, particularly when those officers or directors "control the voting power of the corporation and the minority shareholder represents an opposing faction." *Junker v. Crory*, 650 F.2d 1349, 1356-57 (5th Cir. 1981). Like the present case, *Junker* involved two companies, one of which owned certain property, and one of which leased that property. The *Junker* Court found that the officers and directors of the property-owning company had breached their fiduciary duty to its shareholders when they caused the company to lease property for inadequate rentals, to pay excessive management fees on the property, and to merge their company with the leasing company without properly valuing the owning company's stock. *Id.* at 1357. The result of all this was a merger that was "detrimental" to shareholders. *Id.*

Again, KD Gretna's argument, while perhaps technically correct, ignores the context of

*Junker*. In that case, as described above, the low rent and high management fees were ultimately combined with an extremely unfavorable merger. In *Junker*, the plaintiff, as a minority shareholder, suffered not just from the financial losses of the company's leases, but also from the inability to meaningfully exercise his right to vote on the merger.[4]

KD Gretna has not identified any legal authority, either in its briefs or at oral argument, to support the claim that either Bach or Decatur was required to share Decatur's records before six months had passed. Accordingly, KD Gretna's claim must be dismissed.

### c.     Refusal of KD Gretna's First Offer to Lease the Parking Property

Bach argues that KD Gretna cannot claim that Bach breached his fiduciary duty to the corporation by rejecting an offer for $4,000—which KD Gretna's sole shareholder, Mr. Ducote, stated that he believed was fair to the corporation—when Bach ultimately leased the parking property for an even higher amount. Bach argues that it is "aware of no legal support for the notion that a lease on certain terms *to the plaintiff* would have been fine, but a lease on the same or even better terms *to a third party*" is a breach of fiduciary duty. (Rec. Doc. 29 at 5). In response to this argument, KD Gretna suggests that its $4,000 offer must be viewed in context, and specifically, that it made that offer following Bach's proposal to lease the parking property to 519 Conti for $2,000 per month.[5]

---

[4]Similarly, in *Yuspeh v. Koch*, 02-698 (La. App. 5th Cir. 2/25/03), 840 So.2d 41, which KD Gretna also cites, the plaintiff minority shareholders alleged that the defendants had fraudulently obtained additional shares of stock to get enough votes to conduct a freezeout merger. *Id.* at 43.

[5]Additionally, KD Gretna argues that Bach failed to rely in good faith on Mr. Ducote's opinion as an expert in the parking business in violation of § 12:92(e). However, this second argument is misleading, as § 12:92(e) simply states that a director is protected if he chooses to rely in good faith on the opinion of an expert; it does not require a director to rely on any particular expert opinion in good faith.

The Court agrees with Bach that KD Gretna cannot bring a claim based on the refusal of an offer that is less profitable than the ultimate lease provisions. However, the issue appears to be moot, as KD Gretna does not include rejection of its first offer in its list of alleged breaches of fiduciary duty.

### d.     Refusal of KD Gretna's Second Offer to Lease the Parking Property

Bach's main argument here is that KD Gretna never actually made an offer to lease the property for $7,500; instead, KD Gretna asked for a right of first refusal on any offer below $7,500, so that KD Gretna could make a counteroffer. Attached to KD Gretna's Petition (and also quoted in its Petition) is a copy of the email in which KD Gretna alleges that it made this offer. The pertinent text of that email is as follows:

> The $4,000/mo. rent over a ten year term discussed by Mr. Ducote at today's shareholders' meeting was an offer he made, contemplating only the current lease as he understands it: $2,000/mo. paid by Mr. Bach's company, 519 Conti Street, Ltd., expiring at the end of this year. We hereby request that Mr. Ducote be provided with the terms of any proposed parking lot lease, the value of which is less than $7,500/mo., prior to its execution, such that Mr. Ducote can counter such a proposal with more money in rent for the corporation under the same terms that Mr. Bach may be considering. Please confirm that Mr. Bach will agree to this request, which is clearly in the best interests of the corporation.

Rec. Doc. 1-1 at 44.

Bach argues that the Court should not accept as true KD Gretna's allegation that it made an offer for $7,500, because that is a legal conclusion rather than a factual allegation. Bach argues that because KD Gretna attached the email to its Petition, the Court must look to the contents of that email in adjudicating KD Gretna's motion. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (holding that when adjudicating a motion to dismiss an action for securities fraud, a court "must consider the complaint in its entirety, as well as other

sources courts ordinarily examine" when deciding motions to dismiss, including "documents incorporated into the complaint by reference"). *But see* Wright & Miller, 5C Fed. Prac. & Proc. Civ. §§ 1357, 1364 (3d ed. 2012) (stating that a court is "allowed" to consider these materials, rather than required to consider them). Furthermore, Bach argues that "[i]f . . . an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)).

Bach then argues that the contents of KD Gretna's email do not constitute an offer under Louisiana law. Specifically, Bach argues that in order to constitute an offer to lease, KD Gretna's email would have to contain the essential elements of the lease, including both a precise reference to the thing to be leased and the exact rent to be paid. *See* La. Civ. Code art 2676 (noting that rent must be fixed "in a sum either certain or determinable"). Furthermore, Bach argues that an offer must give the other party the right to assent to the contract, or in other words, an offer must "declare[] the offeror's intent to be bound." *Reynolds* v. Conger, No. 95-2643, 1995 WL 686878, at *5 (E.D. La. Nov. 17, 1995). Otherwise, the overture is merely "an invitation to negotiate or an expression of willingness to receive offers." *Delta Testing & Inspection, Inc. v. Ernest N. Morial New Orleans Exhibit Hall Auth.*, 96-2340 (La. App. 4 Cir. 8/20/97), 699 So.2d 122, 124, *writ denied*, 97-2350 (La. 12/12/97), 704 So. 2d 1194.

In response to Bach's argument, KD Gretna contends that the Court should assume that KD Gretna's allegation that it made an offer is true. Furthermore, KD Gretna argues that whether it intended to be bound is a factual question for the jury, and is therefore inappropriate for the Court to determine on a motion to dismiss.

The Court appreciates that factual disputes are outside the bounds of a motion to dismiss under Rule 12(b)(6). However, as Bach argues, whether KD Gretna's email constituted an offer is a legal question for the Court to decide. Furthermore, Bach correctly points out that documents referenced in and attached to the pleadings, such as KD Gretna's email, are fair game for the Court to examine when adjudicating a motion to dismiss. Accordingly, the Court holds that KD Gretna's email did not contain an offer to lease the property for $7,500, and KD Gretna's claim that Bach breached his fiduciary duty to Decatur and KD Gretna by rejecting that "offer" must be dismissed.

### e.   Other Claims

Bach argues that KD Gretna's allegations with respect to the building, rather than the parking property, do not meet the plausibility standards set forth by *Twombly* and *Iqbal.* KD Gretna alleges that "while rent of $10,000 for the Building may be reasonable," it is impossible to know without other information whether the lease is "in fact 'worth $50 a month or $50,000 a month.'" (Rec. Doc. 1-1 at p. 80, ¶ 46) Bach argues that this language reflects a "mere possibility" that the rent on the building is inadequate. Furthermore, both in their briefs and at oral argument, the Defendants asserted that no lease has actually yet been signed on the building, and it was not clear whether KD Gretna agreed with that conclusion. At this point, Bach's arguments are moot, because the Court has already chosen to dismiss KD Gretna's claims relating to both properties without prejudice for other reasons. The Court will address any remaining issues with the specificity of KD Gretna's allegations should KD Gretna choose to file an amended complaint.

Finally, as described above, KD Gretna has filed an *ex parte* motion to amend its complaint to add a claim for violation of § 12:121, which requires the authorization of two-thirds

of shareholders when a corporation sells or leases "all or substantially all" of its assets. However, this requirement applies only if "the entire corporate business" was "ended" by the transaction. § 12:121(E), and as KD Gretna itself alleges, Decatur's entire business is leasing its two properties. This issue was raised at oral argument, but it has not been fully briefed. Therefore, the Court will also defer any ruling on KD Gretna's proposed § 12:121 claim.

## IV.   CONCLUSION

KD Gretna has listed seven specific instances in which it alleges that Bach breached his fiduciary duty to Decatur and KD Gretna. To the extent that those instances involve Bach's refusal to provide KD Gretna with information, they must be dismissed on the grounds that Bach did not yet owe KD Gretna a duty to share corporate records at the time they were requested. To the extent that KD Gretna's claims rely on Bach's rejection of its emailed "offer" to lease the parking property for $7,500, they must be dismissed because the Court holds that KD Gretna's email did not actually contain such an offer. KD Gretna's remaining claims must be dismissed for failure to plead either gross negligence or reckless disregard for the interests of the corporation as required by Louisiana law. However, KD Gretna will have the opportunity to amend its complaint to address these problems.

Accordingly, IT IS ORDERED that Defendant Sidney M. Bach's Motion to Dismiss for Failure to State a Claim (Rec. Doc. 11) is GRANTED. KD Gretna's claims are DISMISSED WITHOUT PREJUDICE. KD Gretna has 14 days from the date of this Order to file an amended complaint.

In light of this ruling, IT IS FURTHER ORDERED that KD Gretna's pending *Ex Parte* Motion for Leave to File Verified First Amended and Supplemental Complaint (Rec. Doc. 26) is DENIED WITHOUT PREJUDICE. KD Gretna may request leave to include a claim for

violation of § 12:121 if and when it seeks to re-plead its other claims.

     New Orleans, Louisiana, this 26th day of March, 2013.

_____
UNITED STATES DISTRICT JUDGE
